HERBERT SUMNER DAVIS, Guardian, etc., Respondent, v. PACIFIC POWER COMPANY, Appellant.

Negligence — Unprotected Machinery — Dangerous Projections in Shaft—Injury to Employee of Tenant—Liability of Owner.—Where a corporation engaged in the business of leasing buildings for business purposes and furnishing steam power in connection therewith, after leasing the basement and first floor of its building, erected in the basement an iron shaft to transmit power to a new building, which shaft passed through the casing of the basement door and along one side of the basement stairs, and that portion of the shaft over the stairway was unprotected, and had upon its surface rough, jagged projections and sharp points varying from a sixteenth to an eighth of an inch in height, which were of a character calculated to make the shaft at that point dangerous and likely to catch clothing, and were not visible when the shaft was revolving, and the plaintiff, being unaware of the projections in the shaft, and being the employee of the lessee of the basement, went upon the basement steps to the glass doors leading to the basement, for the purpose of seeing thereby to remove some thorns from his hand, having no available light in the basement sufficient for that purpose, whereupon his clothing was caught in the projections of the revolving shaft, near the stairway, and his body and limbs, in consequence, were badly broken and injured upon the shaft: a verdict for the plaintiff for damages for the injury thus sustained will not be set aside upon appeal.

Id.—Consent of Tenant to Erection of Shaft—Effect of Verdict—Sufferance—Right of Plaintiff.—Where the evidence is conflicting as to whether the tenant gave his consent to the erection of a shaft in the basement by the owner of the building, and the court instructed the jury that if the defendant erected and maintained the shaft with the consent of the defendant, the plaintiff, as the tenant's employee, could not recover, the verdict must be regarded as negativing such consent, and the plaintiff, being at best a mere licensee, and exercising a privilege at bare sufferance, is not in a position to question the right of the plaintiff to be engaged as he was on the stairway.

Id.—Duty of Employer—Removal of Disability.—The plaintiff, as an employee of the tenant, was in the line of duty to his employer in seeking to remove the cause of disability to work for his employer as speedily and conveniently as possible, and the basement doors furnishing the most available place for that purpose, his position there was not that of a mere volunteer without right, but he had a right to be where he was when injured.

Id.—Duty to Protect From Dangerous Machinery.—The defendant owed the plaintiff the duty of protection from dangerous machinery, whether the defendant was rightfully maintaining its shaft upon the premises or not.

Id.—Assumption of Risk by Tenant.—Where the defendant objected to the introduction of the shaft, and the lessor informed him that he ought

not to object, but that if he did it would make no difference, that the shaft had to go in, and that he would never be disturbed by it, and the shaft remained wholly under the care and management of the defendant, neither the tenant nor his employee can be held to have assumed any of the risks incident to its maintenance.

ID. — RESPONSIBILITY OF LANDLORD — DUTY TO PROTECT MACHINERY. — Where a landlord retains or has control of a portion of leased premises, the responsibility rests with him to see that no injury results to those having rights there by reason of the manner in which such portion of the premises is occupied or used; and, if he puts dangerous machinery thereon, it is his duty to fence it, or use other proper means to protect those rightly in its vicinity.

ID. — CONTRIBUTORY NEGLIGENCE — QUESTION FOR JURY. — The rough projections of the shaft not being visible to the plaintiff, and not being apparent while the shaft was in motion, it cannot be said, as matter of law, that he was guilty of contributory negligence in allowing his clothing to be caught in those projections; but the question as to whether he was guilty of contributory negligence is a proper one for the jury.

ID. — ILLUSTRATION OF TESTIMONY — REFERENCE TO PIECE OF IRON. — It is not error to permit a witness, in illustration of his testimony with reference to the size and condition of the shaft, to refer to a piece of iron of about the same dimensions, used, not as a model, but simply to illustrate more clearly the testimony of the witness.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.

The facts are stated in the opinion of the court.

*C. H. Wilson*, for Appellant.

Under the facts in the case the defendant owed no duty to the plaintiff, who was a mere licensee wandering about the premises. (*Balch* v. *Smith*, 7 Hurl. & N. 736; 2 Shearman and Redfield on Negligence, sec. 684; *Sullivan* v. *Waters*, 14 I. R. C. L. 460; *Wright* v. *Rawson*, 52 Iowa, 329; 35 Am. Rep. 275; *Heinlein* v. *Boston etc. R. R. Co.*, 147 Mass. 136; 9 Am. St. Rep. 676; *Pfeiffer* v. *Ringler*, 12 Daly, 437; *Evans* v. *American etc. Co.*, 42 Fed. Rep. 519; *Pierce* v. *Whitcomb*, 48 Vt. 127; 21 Am. Rep. 120; *Wilkinson* v. *Fairrie*, 1 Hurl. & C. 633–35; *Severy* v. *Nickerson*, 120 Mass. 306; 21 Am. Rep. 514; *Kauffman* v. *Maier*, 94 Cal. 269; 1 Taylor's Landlord and Tenant, 8th ed., sec. 175 *a*, p. 198; *Schmidt* v. *Bauer*, 80 Cal. 565; *Sterger* v. *Van Sicklen*, 132 N. Y. 499; 28

Am. St. Rep. 594; *Redigan* v. *Boston etc. R. R. Co.*, 155 Mass. 44; 31 Am. St. Rep. 520; *Zoebisch* v. *Tarbell*, 10 Allen, 385; 87 Am. Dec. 660; *Bedell* v. *Berkey*, 76 Mich. 435; 15 Am. St. Rep. 370; *Flannigan* v. *American Co.*, 11 N. Y. Supp. 688; *Hounsell* v. *Smith*, 7 Com. B., N. S., 731; *Parker* v. *Portland Publishing Co.*, 69 Me. 173; 31 Am. Rep. 262; *Faris* v. *Hoberg*, 134 Ind. 269; 39 Am. St. Rep. 261; *Knox* v. *Hall Steam Power Co.*, 69 Hun, 231; *McCarthy* v. *Foster*, 156 Mass. 511; *Storey* v. *Ashton*, L. R. 4 Q. B. 476; *Mitchell* v. *Crassweller*, 13 Com. B. 237; 22 L. J. Com. P. 100; Wood's Master and Servant, 2d ed., 540, et seq; *Kline* v. *Central Pac. R. R. Co.*, 37 Cal. 400; 99 Am. Dec. 282.) The defendant owed no duty to the plaintiff to place a guard about the shaft. (*Bolch* v. *Smith, supra; Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572–85; 3 Am. Rep. 506; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396–99; *Townsend* v. *Langles*, 41 Fed. Rep. 919; *Schroeder* v. *Michigan Car Co.*, 56 Mich. 132; *Hale* v. *Cheney*, 159 Mass. 268; *Tinkham* v. *Sawyer*, 153 Mass. 485; *Kelley* v. *Silver Spring Co.*, 12 R. I. 112; 34 Am. Rep. 615; *Sanborn* v. *Atchison etc. Ry. Co.*, 35 Kan. 292; *Mathews* v. *Bensel*, 51 N. J. L. 30; *Ryan* v. *Wilson*, 87 N. Y. 471–74; 41 Am. Rep. 384; *Goodnow* v. *Walpole etc. Mills*, 146 Mass. 261; *Foley* v. *Pettee Machine Co.*, 149 Mass. 294; *Kauffman* v. *Maier*, 94 Cal. 269.) Davis, by failure to object to the erection of the shaft, assumed for himself and for his employees, the risk of injury therefrom. (*Dunn* v. *Spurrier*, 7 Ves. 291; *Powell* v. *Thomas*, 6 Hare, 300; *Williams* v. *Earl of Jersey*, 1 Craig & P. 97; *Davies* v. *Marshall*, 10 Com. B., N. S., 697; *Stephens* v. *Benson*, 19 Ind. 368; *Bankhardt* v. *Houghton*, 27 Beav. 425; *Brewster* v. *De Fremery*, 33 Cal. 341; *Sieber* v. *Blanc*, 76 Cal. 173; *Daley* v. *Quick*, 99 Cal. 179; *Jaffe* v. *Harteau*, 56 N. Y. 398; 15 Am. Rep. 438; *Ivay* v. *Hedges*, 9 Q. B. Div. 80; *Bowe* v. *Hunking*, 135 Mass. 380; 46 Am. Rep. 471; *Tuttle* v. *Gilbert Mfg. Co.*, 145 Mass. 169; *Cowen* v. *Sunderland*, 145 Mass. 364; 1 Am. St. Rep. 469; 2 Wood's Landlord and Tenant, 870; *Van Every* v. *Ogg*, 59 Cal. 566; *Smith* v. *Buttner*, 90 Cal. 99;

*O'Brien* v. *Capwell,* 59 Barb: 497; *Donaldson* v. *Wilson,* 60 Mich. 86; 1 Am. St. Rep. 487; *Nelson* v. *Liverpool Brewing Co.,* L. R. 2, C. P. D. 311; *Henkel* v. *Murr,* 31 Hun, 29; *Roulston* v. *Clark,* 3 E. D. Smith, 366–74; *Fellows* v. *Gilhuber,* 82 Wis. 639; *Monteith* v. *Finkbeiner,* 21 N. Y. Supp. 288; 66 Hun, 633.) Plaintiff could not recover against his employer, and therefore could not recover against the defendant. (*Balch* v. *Smith, supra; Hale* v. *Cheney, supra; Tinkham* v. *Sawyer, supra; Coombs* v. *Cordage Co., supra; Sullivan* v. *India Mfg. Co., supra; Townsend* v. *Langles, supra; Schroeder* v. *Michigan Car Co., supra; Kelley* v. *Silver Spring Co., supra; Sanborn* v. *Atchison etc. Ry. Co., supra; Mathews* v. *Bensel, supra; Ryan* v. *Wilson, supra; Kelly* v. *Barber Asphalt Co.,* 93 Ky. 363; *Stephens* v. *Duncan,* 73 Wis. 404; 9 Am. St. Rep. 806; *Goodnow* v. *Walpole etc. Mills, supra; Palmer* v. *Harrison,* 57 Mich. 182; *Russell* v. *Tillotson,* 140 Mass. 201; *Sjogren* v. *Hall,* 53 Mich. 274; *Moulton* v. *Gage,* 138 Mass. 390; *Ciriack* v. *Merchants' Woolen Co.,* 146 Mass. 182; 4 Am. St. Rep. 307; *Chaffey* v. *Chapel,* 2 N. Y. Supp. 648; *Kean* v. *Detroit etc. Rolling Mills,* 66 Mich. 277; 11 Am. St. Rep. 492; *Carey* v. *Boston etc. Ry. Co.,* 158 Mass. 228; *Taylor* v. *Carew Mfg. Co.,* 140 Mass. 150; *Berger* v. *St. Paul etc. Ry. Co.,* 39 Minn. 78; *Foley* v. *Pettee Machine Works, supra; Kauffman* v. *Maier, supra; Rock* v. *Indian Orchard Mills,* 142 Mass. 522; 1 Taylor's Landlord and Tenant, 8th ed., sec. 175 *a,* p. 197; *O'Brien* v. *Capwell, supra; Robbins* v. *Jones,* 15 Com. B , N. S., 221; *Nelson* v. *Liverpool Brewing Co.,* L. R. 2 Com. P. 311; *Jaffe* v. *Harteau, supra; Johnson* v. *Tacoma etc. Lumber Co.,* 3 Wash. 722; 2 Shearman and Redfield on Negligence, 4th ed., sec. 711.) Plaintiff was guilty of contributory negligence. (*Kenna* v. *Central Pac. R. R. Co.,* 101 Cal. 26; *Holmes* v. *South Pac. Coast Ry. Co.,* 97 Cal. 161; *Sanborn* v. *Atchison etc. Ry. Co.,* 35 Kan. 292; *Berger* v. *St. Paul etc. Ry. Co., supra; Nagle* v. *Allegheny etc. Ry. Co.,* 88 Pa. St. 35; 32 Am. Rep. 413; *Bond* v. *Smith,* 113 N. Y. 378; *Taylor* v. *Carew Mfg. Co., supra; Erie* v. *Magill,* 101 Pa. St. 616; 47 Am. Rep. 739; *Corlett* v. *Leavenworth,* 27 Kan. 673;

*McCrory* v. *Chicago etc. Ry. Co.*, 31 Fed. Rep. 531; *Morrison* v. *Board of Commrs.*, 116 Ind. 431; *Allen* v. *Johnston*, 76 Mich. 31; *Stone* v. *Oregon City Mfg. Co.*, 4 Or. 52; *Travis* v. *Carrollton*, 7 N. Y. Supp. 231; *Splittorf* v. *State*, 108 N. Y. 205; *Railway* v. *Murphy*, 17 Ill. App. 444; *Schoenfeld* v. *Milwaukee etc. Ry. Co.*, 74 Wis. 433; *Goldstein* v. *Chicago etc. Ry. Co.*, 46 Wis. 404; *Baltimore etc. R. R. Co.* v. *Depew*, 40 Ohio St. 121; *Dale* v. *Webster Co.*, 76 Iowa, 370; *Mansfield Coal etc. Co.* v. *McEnery*, 91 Pa. St. 185; 36 Am. Rep. 662; *Metcalfe* v. *Cunard Steamship Co.*, 147 Mass. 66; *Schaefler* v. *City of Sandusky*, 33 Ohio St. 246; 31 Am. Rep. 533; *Knox* v. *Hall Steam Power Co.*, 69 Hun, 231; *Patton* v. *Philadelphia Traction Co.*, 132 Pa. St. 76.) The question is one of law for the court. (*McQuilken* v. *Central Pac. R. R. Co.*, 50 Cal. 7; *Glascock* v. *Central Pac. R. R. Co.*, 73 Cal. 137; *Nagle* v. *California etc. R. R. Co.*, 88 Cal. 86; *Kenna* v. *Central Pac. R. R. Co.*, *supra*.) The use of a model by the witness was improper, the model not being shown to be an exact representation of the shaft. (*Ruloff* v. *People*, 11 Abb. Pr., N. S., 245; 45 N. Y. 213; *People's Pass. Ry. Co.* v. *Green*, 56 Md. 84; *Hollenbeck* v. *Rowley*, 8 Allen 473.)

*George A. Rankin*, for Respondent.

Defendant was a trespasser upon the tenant's premises. (*Satterlee* v. *Bliss*, 36 Cal. 516; Cooley on Torts, 2d ed., 384, citing *Luther* v. *Arnold*, 8 Rich. 24; 62 Am. Dec. 422; *Bryant* v. *Sparrow*, 62 Me. 546; *Crowell* v. *New Orleans etc. R. R. Co.*, 61 Miss. 631; *Glickauf* v. *Maurer*, 75 Ill. 289; 20 Am. Rep. 238; *Center* v. *Davis*, 39 Ga. 210; *Priest* v. *Nichols*, 116 Mass. 401; *Marshall* v. *Cohen*, 44 Ga. 489; 9 Am. Rep. 170; *Meyers* v. *Farquharson*, 46 Cal. 190; *Gray* v. *Boston Gas Light Co.*, 114 Mass. 149; 19 Am. Rep. 324; *Donnelly* v. *Hufschmidt*, 79 Cal. 74.) A landlord keeping control over any portion of the premises is liable for injury resulting from his negligence. (*Loony* v. *McLean*, 129 Mass. 33; 37 Am. Rep. 295; *Toole* v. *Beckett*, 67 Me. 544; 24 Am. Rep. 54; *Glick-*

*auf* v. *Maurer, supra; Gill* v. *Middleton,* 105 Mass. 477; 7 Am. Rep. 548; *Watkins* v. *Goodall,* 138 Mass. 534; *Stapenhorst* v. *American Mfg. Co.,* 15 Abb., N. S., 355; *Kirby* v. *Boylston etc. Assn.,* 14 Gray, 249; 74 Am. Dec. 682; *Readman* v. *Conway,* 126 Mass. 374; *Norcross* v. *Thomas,* 51 Me. 503; 81 Am. Dec. 588; *Priest* v. *Nichols, supra; Elliott* v. *Pray,* 10 Allen, 378; 87 Am. Dec. 653; *Jones* v. *Freidenberg,* 66 Ga. 505; 42 Am. Rep. 86; *Shipley* v. *Fifty Associates,* 106 Mass. 194; 8 Am. Rep. 318; *Jessen* v. *Sweigert,* 66 Cal. 182; *Kalis* v. *Shattuck,* 69 Cal. 593; 58 Am. Rep. 568; *Stewart* v. *Harvard College,* 12 Allen, 58; *Miller* v. *Woodhead,* 22 N. Y. Week. Dig. 58; 2 Shearman and Redfield on Negligence, 4th ed., sec. 719; *Nash* v. *Minnesota Mill Co.,* 24 Minn. 501; 31 Am. Rep. 349.) The question of contributory negligence in this case was for the jury. (*Irelan* v. *Oswego etc. Plank Road Co.,* 13 N. Y. 533; *Fernandes* v. *Sacramento City Ry. Co.,* 52 Cal. 45; *Glascock* v. *Central Pac. R. R. Co.,* 73 Cal. 137; 1 Shearman and Redfield on Negligence, sec. 54; *Leishmann* v. *Brighton R. R. Co.,* 23 L. T. 712; *Higgins* v. *Deeney,* 78 Cal. 578; *Orcut* v. *Pacific Coast Ry. Co.,* 85 Cal. 291; *Wilson* v. *Southern Pac. R. R. Co.,* 62 Cal. 172, 173; *Chidester* v. *Consolidated Ditch Co.,* 59 Cal. 197; *Shafter* v. *Evans,* 53 Cal. 32; *New England Glass Co.* v. *Lovell,* 7 Cush. 321; *Schierhold* v. *North Beach etc. R. R. Co.,* 40 Cal. 447.) It cannot be imputed to the plaintiff as negligence that he did not anticipate negligence on the part of the defendant. (*Newson* v. *New York Cent. R. R. Co.,* 29 N. Y. 383, 391; *Ernst* v. *Hudson River R. R. Co.,* 35 N. Y. 9, 35; 90 Am. Dec. 761; *Barton* v. *Syracuse,* 37 Barb. 292, 299; *Fox* v. *Sackett,* 10 Allen, 535; 87 Am. Dec. 682; *Carroll* v. *New York etc. R. R. Co.,* 1 Duer, 571; *Reeves* v. *Delaware etc. R. R. Co.,* 30 Pa. St. 454; 72 Am. Dec. 713; *Colegrove* v. *New York etc. R. R. Co.,* 6 Duer, 382; affirmed 20 N. Y. 492; 75 Am. Dec. 418; *Owen* v. *Hudson River R. R. Co.,* 35 N. Y. 516, 518; *Cook* v. *Champlain etc. Co.,* 1 Denio, 91; *Gee* v. *Metropolitan R. R. Co.,* L. R. 8 Q. B. 171; *Cleveland etc. R. R. Co.* v. *Terry,* 8 Ohio St. 570; *Robinson* v. *Western Pac. R. R. Co.,* 48 Cal. 409;

*Shea* v. *Potrero etc. R. R. Co.*, 44 Cal. 414; *Brown* v. *Lynn*, 31 Pa. St. 510; 72 Am. Dec. 768; *Kellogg* v. *Chicago etc. R. R. Co.*, 26 Wis. 223; 7 Am. Rep. 69; *Seward* v. *Milford*, 21 Wis. 485; *Langan* v. *St. Louis etc. Ry. Co.*, 72 Mo. 392; *Damour* v. *Lyons*, 44 Iowa, 276; *Moulton* v. *Aldrich*, 28 Kan. 306; *Continental etc. Co.* v. *Stead*, 95 U. S. 161; *Filer* v. *New York Cent. R. R. Co.*, 59 N. Y. 351; *Weston* v. *New York Elevated R. R. Co.*, 73 N. Y. 595; *Illinois etc. R. R. Co.* v. *Shultz*, 64 Ill. 172; *Steele* v. *Central R. R. Co.*, 43 Iowa, 109; *Williams* v. *Central R. R. Co.*, 43 Iowa, 396; *McWilliams* v. *Detroit etc. Co.*, 31 Mich. 274; *Snyder* v. *Pittsburgh etc. Ry. Co.*, 11 W. Va. 14; *Shultz* v. *Chicago etc. Ry. Co.*, 44 Wis. 638; *Minor* v. *Sharon*, 112 Mass. 477; 17 Am. Rep. 122; *Beisiegel* v. *New York Cent. R. R. Co.*, 34 N. Y. 622; 90 Am. Dec. 741; *Philadelphia etc. R. R. Co.* v. *Hagan*, 47 Pa. St. 244; 86 Am. Dec. 541; *Jetter* v. *N. Y. & H. R. R. Co.*, 2 Abb. Ct. App. 458; *Vandall* v. *Garner*, 1 Cromp. & M. 21; *Yik Hon* v. *Spring Valley W. W.*, 65 Cal. 620; 1 Thompson on Negligence, sec. 168; *Fero* v. *Buffalo etc. R. R. Co.*, 22 N. Y. 209; 78 Am. Dec. 178; *Jefferis* v. *Philadelphia etc. R. R. Co.*, 3 Houst. (Del.) 447.)

VAN FLEET, J.—Action to recover damages for personal injuries. Plaintiff recovered a verdict, and from the judgment entered thereon and an order denying a new trial the defendant appeals.

Defendant, a corporation, is engaged in the leasing of buildings for business purposes and furnishing steam power in connection therewith. During the year 1891 William Davis, the father of the plaintiff, occupied, under lease from defendant, the basement and first floor of one of its buildings at No. 28 Jessie street, in the city of San Francisco. These premises were used by William Davis as a factory for the manufacture of horse-collars. The basement was an underground room, fifty-two by twenty-five feet. In one corner of this basement, where it fronts on Jessie street, there was a flight of stairs leading from the basement into Jessie street,

and extending into the basement about five feet. Mid-
way of the stairs were two large doors, consisting mostly
of glass, by means of which the basement was largely
lighted. The stairs and doors afforded the only means
of entering the basement directly from the street, and
without their use the basement was largely useless.
There was no machinery in the basement when it was
leased to William Davis, and he never used any therein,
except some collar-blocking machines run by hand. He
used certain machinery run by steam on the floor above
the basement, the power to run this machinery being
furnished by the defendant by means of a shaft which
was in the second story of the building. The stairway
in question was constantly used by William Davis and
his employees in carrying goods to and from the base-
ment and the street, and for other purposes. There was
an inner stairway leading from the basement to the first
floor. In September or October, 1891, the defendant
entered upon the leased premises and erected in this
basement an iron shaft, for the purpose of transmitting
power from its power-house on the west side of the
leased premises to a new building erected by it across
Jessie street on the east. This shaft was a little over
three inches in diameter, and ran throughout the entire
length of the basement and under Jessie street to the
new building. It was put up along the west wall of the
basement about ten inches out therefrom, being sup-
ported by brackets attached to the sleepers of the floor
above, and was carried over and along one side of the
front basement stairs aforesaid, and through the casing
of one of the doors above referred to. Where it ran
over the stairway it varied in height from about four or
five feet above the lower step to a little over two feet
above the step on which the doors rested, where it
passed through the casing. When completed and con-
nected the shaft, which was kept running every day
except Sundays, revolved at a high rate of speed. The
plaintiff, at the time of receiving the injuries which
form the basis of the action, was a lad of about sixteen

years of age.  Shortly after the erection of the shaft,
about November, 1891, he went to work in his father's
collar factory as an employee.  For a short time he was
employed partly in the basement and partly on the floor
above.  During this time he had occasion to observe
the running of the shaft.  Subsequently he was set at
work on the floor above, running some of the time a
steam straw-cutter, and at others a collar-stuffer.  On
the 31st of December, 1891, plaintiff, while engaged at
work on the straw-cutter, got some thorns or thistles in
his hand, and it became necessary for him to go to the
light to get them out.  By reason of obstructions on the
floor where plaintiff was working at the time, there was
no available light sufficient for his purpose, and the
only place to which he could go without leaving the
building was to the glass doors in the basement.  He
accordingly went into the basement and stood on the
steps in front of the basement doors, along which ran
the shaft, as above stated, and, while engaged in remov-
ing the thistles from his hand, his clothing was caught
by the revolving shaft in some manner unknown to
him, and he was drawn over and around the shaft, all
his clothing stripped from him, and his body and limbs
very badly broken and injured.  When the shaft was
stopped to remove plaintiff's clothing it was discovered
that that portion of the shaft over the stairway, and
where plaintiff was caught, had upon its surface a great
many rough and jagged projections and raised, sharp
points, varying from a sixteenth to an eighth of an inch
high, and of a character calculated to make the shaft at
that point much more likely to catch clothing or other
substance of the kind coming in contact with it, and
consequently more dangerous in that respect.  These
projections had the appearance of having been produced
by the grinding or scraping of tongs or other instru-
ments used in handling or turning the shaft while plac-
ing it in position.  They could not be seen when the
shaft was revolving, as it then appeared to have a smooth
surface, and plaintiff was unaware of this condition of

the shaft until after the accident.  Up to the time of
the injury to plaintiff the shaft had been permitted by
defendant to remain entirely unfenced and unprotected
throughout the length of the basement and along the
stairway, and open at all points to approach and con-
tact by any one.

The contention of appellant is that upon the facts
disclosed plaintiff is not entitled to recover, for the rea-
sons: 1. That at the time of the accident defendant owed
the plaintiff no duty which required it to protect him
from the dangers of its shaft; and 2. That the evidence
shows that plaintiff was guilty of contributory negli-
gence proximately conducing to his injury.  The first
proposition is subdivided by counsel into several minor
heads, each of which is elaborately presented in the
briefs, but they all converge eventually in the general
proposition, as stated above, that defendant owed the
plaintiff no duty in the premises which can render it
liable in damages.

It is argued that at the time of the accident the plain-
tiff was wandering over the premises of his employer,
for his own purposes or convenience, and not in pur-
suit of his employment, and away from where his duty
called him; that while so engaged he was not on the
stairway by right, but was a mere licensee, and that as
such the defendant was under no obligation to guard
him from injury.  In the first place, this proposition
rests upon the assumption of a right in the defendant
itself to maintain its shaft upon the premises.  The
evidence upon this point is conflicting, that of plaintiff
tending to show that defendant went upon the leased
premises and erected the shaft without asking or receiv-
ing any permission from William Davis, the tenant,
while the evidence on the part of the defendant is to
the effect that, although defendant originally started in
to erect the shaft without permission, William Davis
afterwards assented thereto.  In view of the fact, how-
ever, that the court below instructed the jury that, if
defendant erected and maintained the shaft with the

consent of William Davis, the plaintiff could not recover, the verdict must be regarded as negativing such consent. The defendant was, therefore, a trespasser, or at best was itself a mere licensee, exercising a privilege at bare sufferance. As such it is not in a position to question the plaintiff's right in the premises. But, even if it were, the evidence does not sustain defendant's position. As we view it the evidence shows a clear right in the plaintiff to be where he was. There is certainly nothing to show that he had been forbidden by his employer to go into the basement, or upon the stairs, or elsewhere, or any thing to indicate that he was in any way restricted as to going about the premises for any necessary purpose. But it is said that plaintiff was not on the stairway for a necessary purpose or in the performance of his duty. We think the jury were justified in saying that he was. It was not an absolute necessity, it is true, which took him there, but it is not necessary that it should have been. He needed a good light to remove the briers or thistles from his hands, and the basement doors afforded the most available place for the purpose without going from the building, which he was not called upon to do. It is true that he did not go there directly in the line of his work, but it cannot be said that it was not in the line of his duty. He was suffering from pain and inconvenience from a cause which interfered with and prevented him from proceeding with his work, and it was his duty to his employer to remove the cause of his disability as speedily and conveniently as possible. In this view, his going to the basement and the stairway was as much in the interest of his employer as his own, and cannot, therefore, be justly characterized as a wandering over the premises solely for his own private ends. To hold, under the circumstances, that plaintiff was in the place where the injury occurred as a mere volunteer, and without right, would be taking an exceedingly narrow view of the rights of an employee. The case is quite distinguishable from the cases relied upon by the

appellant.   The plaintiff having a right to be where he
was, the defendant owed him the duty of protection,
whether or not the latter was rightfully maintaining its
shaft upon the premises.   (*Donnelly* v. *Hufschmidt*, 79
Cal. 74.)

It is said that William Davis, by failure to object to
the erection and maintenance of the shaft, assumed for
himself and his employees the risk of injury therefrom.
But assuming this to be the law, the evidence shows
that William Davis did, in effect, if not in terms, object
to the introduction of the shaft.   When he was in-
formed that defendant was proceeding to erect the shaft,
and was disturbing and interfering with his workmen
in the basement, he went to its officers and inquired
into their purposes.   He was informed substantially that
he ought not to object, but, if he did, it would make no
difference; in other words, that the shaft had to go in.
He was assured that he would never know it was there,
either from the space it would occupy or the noise
it would make; that defendant's servants would go in
every day and look after it, and he, Davis, should never
be disturbed by it.   This evidence, it is true, is denied
by defendant, but the jury evidently believed and acted
upon it.   The shaft was admittedly put in and main-
tained solely for the use and benefit of the defendant,
and was in no way connected with the business of, or
used by, William Davis.   It was, furthermore, wholly
under the control and management of defendant, as
was likewise the space that it occupied.   Under such
circumstances the tenant cannot be held to have as-
sumed any of the risks incident to its maintenance.
Where the landlord retains or has control of a portion
of leased premises the responsibility rests with him to
see that no injury results to those having rights there
by reason of the manner in which such portion of the
premises is occupied or used; and, if he puts dangerous
machinery thereon, it is his duty to fence it, or use
other proper means to protect those rightly in its vicin-
ity.   These principles are thoroughly well settled.   (2

Shearman and Redfield on Negligence, sec. 719; *Stewart*
v. *Harvard College*, 12 Allen, 58; *Glickauf* v. *Maurer*, 75 Ill.
289; 20 Am. Rep. 238; *Jessen* v. *Sweigert*, 66 Cal. 182;
*Readman* v. *Conway*, 126 Mass. 374.)

On the question of contributory negligence we think
the case was a proper one for the jury. It is only where
the undisputed facts are such as to leave but one reason-
able inference, and that of negligence, that the court is
justified in taking the question from the jury. It is
not enough that the evidence be without conflict. If,
upon the facts disclosed, there is room for a reasonable
deduction of proper care on the part of the person
injured, the case is one for the jury, and the court is
not justified in substituting its judgment for that of the
jury, and withdrawing the question from their consid-
eration. (*Fernandes* v. *Sacramento City Ry. Co.*, 52 Cal.
45; Wharton on Negligence, sec. 420.) In *Shierhold* v.
*North Beach etc. R. R. Co.*, 40 Cal. 447, it is said: "The
fact of negligence is generally an inference from many
facts and circumstances, all of which it is the province
of the jury to find. It can very seldom happen that the
question is so clear from doubt that the court can under-
take to say, as matter of law, that the jury could not
fairly and honestly find for the plaintiff. It is not the
duty of the court in such cases, any more than in any
other, to usurp the province of the jury and pass upon
the facts; and the nonsuit should only be granted in
such cases where the evidence of the misconduct on the
part of the injured party is so clear and irresistible as
to put the case on a par with those cases where a non-
suit is granted for a failure to introduce evidence suffi-
cient to go to the jury upon some point essential to the
plaintiff's case. The fact must be so clear that, looking
upon the plaintiff's case in the most favorable light and
giving him the benefit of all controverted questions, the
court can see that a verdict in his favor must necessarily
be set aside." (And see *Van Praag* v. *Gale*, ante, p. 438.)
Tested by these principles, we cannot say the evidence
clearly or necessarily discloses negligence on the part

of the plaintiff. It is true that plaintiff knew of the existence of the shaft along the stairway, and was aware in a general way of its dangerous character, and it was his duty to look out for it. It was his duty to use care, knowing of the danger; but he says that he did. He testifies that he stood at what he considered a safe distance from the shaft, but that the first thing he knew he was caught and jerked over it. Just how the thing occurred cannot be known, but it could be accounted for on many reasonable theories other than that of plaintiff's negligence. A gust of wind may have blown his apron against the shaft, or a momentary dizziness may have seized him. Even if, in a moment of forgetfulness, he moved too near the shaft, and was thereby caught, it would not necessarily be negligence. People are liable to lapses of memory with reference to facts with which they are daily confronted. It would be for the jury to say whether such lapse of memory was negligence, taking into consideration all the circumstances. (*Van Praag* v. *Gale, supra.*) Furthermore, it appears that the danger from the shaft was not wholly visible or apparent. The rough and jagged surface of the shaft at the point where plaintiff was caught tended, as shown by the evidence, to make the shaft at that point much more likely to seize and hold clothing or other pliant substance than it would otherwise have been. This condition of the shaft was not visible when the shaft was revolving, and was unknown to plaintiff. How far this roughened surface may have aided the natural centripetal tendency of the revolving shaft, and thus contributed to the injury, it is impossible to say. It may well be that the jury considered that, but for this condition of the shaft, the degree of care exercised by plaintiff would have avoided the accident. Plaintiff was only called upon to use such circumspection as would avoid those dangers which were apparent.

There are no other points requiring special consideration. It was not error to permit the witness, Peterson, in illustration of his testimony with reference to the

size and condition of the shaft, to refer to a piece of iron of about the same dimensions. It was not pretended that it was a model, and the jury were so expressly informed; but it was simply used to illustrate more clearly the testimony of the witness. For this purpose it was proper. The instructions, taken together, fully and fairly laid the case before the jury. If any thing they were more favorable to defendant than to the plaintiff.

The judgment and order are affirmed.

GAROUTTE, J., and HARRISON, J., concurred.

Hearing in Bank denied.