[Civ. No. 1731.   Third Appellate District.—December 28, 1917.]

SUSAN M. REYNOLDS, Respondent, v. E. CLEMENS HORST CO., (a Corporation), Appellant.

NEGLIGENCE—INJURY TO SERVANT WORKING ON HOP-PICKING MACHINE— OBVIOUS AND WELL-UNDERSTOOD PERIL — INSUFFICIENCY OF EVIDENCE.—In this action for injuries received by the plaintiff from having her dress caught in a revolving shaft while working on a hop-picking machine, it is held under the evidence that she did not voluntarily place herself in the way of an obvious and well-understood peril.

ID.—EMPLOYERS' LIABILITY LAW—ASSUMPTION OF RISK NO DEFENSE. Under the Employers' Liability Act, the assumption of risk is no defense to an action by a servant for injuries.

ID.—GUARDING OF SHAFT—DUTY OF DEFENDANT—SUFFICIENCY OF EVIDENCE.—In this action it is also held that the evidence is sufficient to warrant the conclusion that the accident would have not occurred if the shaft had been properly protected, and that the defendant should have properly guarded the same.

ID.—CREDIBILITY OF WITNESSES — INSTRUCTION. — Where the court instructed the jury in the language of the code that a witness false in one part of his testimony is to be distrusted in others, the refusal to give the more elaborate instruction that if they believed that

a witness had testified falsely and had done so knowingly and willfully as to any material matter, his testimony may be disregarded, was not prejudicial error, where the court also gave elaborate instructions on the credibility of witnesses.

ID.—ENACTMENT OF WORKMEN'S COMPENSATION ACT—LAW GOVERNING PRIOR INJURIES.—The Workmen's Compensation Act of 1913, in view of the saving clause therein declaring that the compensation provisions of the act should not apply to any injury sustained prior to the taking effect thereof, continued in force existing laws as to injuries sustained prior to such time.

ID.—RIGHT TO COMPENSATION UNDER EMPLOYERS' LIABILITY ACT—REPEAL OF ACT—RIGHT NOT DESTROYED.—The right of an employee to compensation under the Employers' Liability Act of 1911 is a vested right, which was not taken away by the repeal of such act.

APPEAL from a judgment of the Superior Court of Tehama County, and from an order denying a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

H. P. Andrews, W. A. Fish, A. H. Jarman, Gavin McNab, Edward C. Harrison, and Maurice E. Harrison, for Appellant.

Frank Freeman, and James T. Matlock, for Respondent.

BURNETT, J.—Plaintiff had the verdict in an action for damages resulting from personal injuries. The accident was caused by her dress being caught by a revolving iron shaft while she was engaged at work on a hop-picking machine, and she was seriously hurt. We attach hereto a diagram to illustrate the situation and to make clearer the testimony to which we shall refer. "A" represents the platform on which plaintiff stood, "B" the shaft on which her dress was caught, "C" the south post close to or against which she stood when her clothing came into contact with the shaft, "D" the grate with its iron bars on which the hops fell from above, "E" the post at the north end of the platform and distant from "C" nearly eight feet, "F" the brace to post "C." The platform was twenty inches, and the shaft twenty-nine and three-fourths inches from the floor. The south post, "C," was five and one-half inches thick, the shaft was four inches

distant from it, and it was seven inches to said post from
the bottom of the most southern iron rod in said grate.

That plaintiff's version of the accident may be understood,
we quote from her testimony as follows: "I was standing
upon that platform that comes along there in front of that
grate and my job was to pick the sticks and leaves off this
grate, and throw them behind me on the floor, and the hops
was to be left on the grate, and that was my orders, and this
stick was furnished to us to poke the hops down when they
come on the machinery, and if the hops caught above the
machine we were to take the stick and shake it along until
the hops went through and we was to walk up and down on
this thing and pick these hops out.   We were not pickers,
but we was to walk backward and forward and see the hops
went through and if any stems or sticks, to throw them off
on the floor, and when we got that done, to go back on the
other end and clean it out the same way, and so I was walking
from this end to this end, and up in the corner sometimes
they would fall in bunches as big as that [illustrating], and
there was a big bunch sticking there that didn't fall down,
and so I took this stick here and was reaching up like that to
pull the hops down, and when I come back from pulling the
hops down, when the bunch fell in front of me on the grate,
I felt something pull on the left-hand side of my dress, and

of course you would always think something, and I thought somebody went along there and touched me, and I never thought of the machinery I was tangled up in, and when I felt that, I turned to see who was behind me, and just at that I noticed my dress was on the shaft, and I didn't think then or realize my dress was tangled in the shaft, and just as I felt it pull, I looked around and felt myself going, and put my hands up, thinking I would grab something to save myself falling, and I was pitched up in the air and came down on the floor as hard as I could come.''

She testified that she had seen this shaft and others, but had no idea that she could ever get connected with it in any way; that she never thought about it, it had never entered her head that there was any danger there; that she thought the foreman who put a lady to work there would not put her where she could get connected with any machinery; that anybody could see the shaft. There was nothing to prevent her from seeing it when she was on the floor, but when she was working on the platform, she could not see it unless she leaned over, but she could not do that; being a short woman, she had to come to the end of the platform to reach up and pull the hops down, and sometimes had to ''reach quite a bit to take them down,'' and in answer to the question by appellant's counsel: ''Will you explain to me why it was necessary for you to go so close to that revolving shaft at the extreme south end of that bin that your clothing could in any way become caught in that revolving shaft?'' she replied: ''When I was just as far as I could get to the end of these grates here, and had that stick, I couldn't possibly reach this place up here; I had tried it, and even had to get on my tiptoes several times to hammer at a bunch of stuff up there to compel it to come down. I didn't know the distance from there up there because I never measured it, but when I was standing as near as I could get to this end, I have often stuck my shoulder under that thing—that is how high it was to me—I have often stuck my shoulder under that thing there and reached this way [indicating] to get those things down, and when I would do that, sometimes I would have to reach four of five times, and hammer at it to get it started down. That is the reason why I had to go up so close to that end.''

She also testified that she was not warned of any danger, and that she had to work rapidly at her task to keep the grate

clear.  We do not think it can be said that respondent "voluntarily placed herself in the way of an obvious and well-understood peril," and must, therefore, suffer the consequences of her conduct.  The case seems quite different from those like *Brett* v. *Frank Co.,* 153 Cal. 267, [94 Pac. 1051], *Ergo* v. *Merced F. G. & E. Co.,* 161 Cal. 334, [41 L. R. A. (N. S.) 79, 119 Pac. 101], *Bressette* v. *Stone,* 152 Cal. 74, [121 Pac. 312], and *Andrews* v. *Valley Ice Co.,* 167 Cal. 11, [138 Pac. 699].  The situation here is more like that presented in *Davis* v. *Pacific Power Co.,* 107 Cal. 563, [48 Am. St. Rep. 156, 40 Pac. 950], and kindred cases.  It may indeed be said that the danger here was not so obvious as in the Davis case.  The shaft that caught plaintiff's clothing was not quite an inch and a half in diameter, and it projected about six inches beyond the easterly side of the post "C."  It was revolving rather slowly, and it did not present a necessarily dangerous aspect.  Indeed, it is quite likely that if it had been a man whose clothing was brought into contact with the shaft, no injury would have been produced.  And it is safe to say that plaintiff might have been placed in a similar position many times without suffering any inconvenience. It is to be remembered that what is called the shaft, as far as the exposed portion is concerned, was a mere rod exhibiting but small centripetal force, and not presenting any complication by reason of cogs or a belt or other mechanical contrivance.  The chances were rather against the happening of such an accident, and there would probably be more reason for the contention that appellant was not guilty of negligence in leaving the shaft exposed than for the position upon which so much emphasis is laid that the situation presented "an obvious and well-understood peril."  However, as to this, we are satisfied that there was ground for the holding that appellant was derelict in not more carefully guarding against such contingency as was developed.  In this connection we may state that the probability of an accident was somewhat increased by the irregularities on the surface of said shaft, it having been "chewed up with a Stilson wrench," as stated by one of the witnesses.

But if we concede that to one familiar with machinery and the laws appertaining to mechanics, the situation might appear obviously dangerous, it does not follow that plaintiff understood, comprehended, and appreciated the peril.  It is

a reasonable conclusion from her evidence that her lack of understanding of whatever peril existed was such as to relieve her of the charge of contributory negligence in continuing her employment in such close proximity to the shaft. For at the time plaintiff was injured, in order to charge her with culpable conduct according to the requirement of the existing law, it was necessary for her not only to know the unsafe condition of the machine, but that she consented to work in the place of danger after full comprehension of the risk which she thereby incurred. (*Jacobson* v. *Oakland M. & P. Co.*, 161 Cal. 425, [Ann. Cas. 1913B, 1194, 119 Pac. 653].)

Again, it is quite apparent that the position which she occupied while employed has an important bearing upon the question of the imminence of the peril. It was manifestly less dangerous than if she had been working nearer or over the shaft. Considering her position on the platform and the innocent appearance of the shaft, the danger should be denominated a hidden rather than an obvious one. But, after all, this contention of appellant resolves itself into the legal proposition that she assumed the risk of a known hazard, but this fact, as pointed out in *Crabbe* v. *Mammoth Channel Gold Min. Co.*, 168 Cal. 500, [143 Pac. 714], and other cases, affords no defense under the Employers' Liability Act [Stats. 1911, p. 796], in effect at the time of the accident.

Upon the theory that there was an obvious peril, the other important consideration is not whether she assumed the risk, but whether she was chargeable with negligence that contributed to her injury, and this depends upon what she was doing at the time. To determine this question, we must consider the character of the danger, and other circumstances as we shall presently see.

We can see no merit in the point that she "voluntarily chose an unusual and more dangerous method to perform her duties when there were two or more safe ways known by and open to her." The declaration of appellant simply amounts to a specification of the manner in which she failed to exercise due care, and displayed a reckless disregard for her own safety. There are many cases illustrating such an exhibition of negligence, and no one would deny that she should not recover if her conduct was thus properly characterized by appellant. But we cannot say that the method em-

ployed by her in doing the work was unreasonable or
improper or that she was not following in good faith the
directions given her by the employer. Her explanation of
the occurrence is not improbable, and we must hold that she
was acting as an ordinarily careful person would under the
circumstances. In considering her account of the affair, we
cannot lay out of view the circumstance that she was called
upon to work rapidly, and that the emergency of the situation
required her to move back and forth upon the platform in
order to reach with the short stick which she used the differ-
ent portions of the grate above. Even if she stationed her-
self closer to the shaft than appears now to have been
necessary, the stress of the circumstances surrounding her
would excuse the mistake. As to this, indeed, appellant
attempts to demonstrate that she would have been nearer to
the hops if she had stood several inches from said south post.
This may be true, but in view of the haste required, we can-
not hold her to an exact computation of the respective dis-
tances. Besides, her statement that it was necessary to take
advantage of the brace is not unreasonable. We are satisfied
it cannot be said that plaintiff voluntarily selected an unsafe
place in which to work, or adopted a dangerous method to
discharge her duties. Guided by her statements, we must
conclude that she was without fault, and that the accident
would not have occurred if said shaft had been suitably pro-
tected. "Just how this thing occurred," as said in the Davis
case, *supra*, may not be known. There is no doubt, however,
that plaintiff's clothing came in contact with the shaft. This
may have been caused by a sudden gust of wind or by her
sudden movement in reaching for the hops, and she may even
have been standing close to the last rod on the grate instead
of against the post as plaintiff thinks, but at any rate, we
cannot say that she did not act with due circumspection.

What has been said is probably a sufficient answer to the
next proposition of appellant that "no obligation rested on
appellant to warn its employees of patent and obvious dan-
gers." The principle may be accepted, but its application
must be rejected. "The shaft was not a menace in the sense
that the likelihood of its catching her dress while she was at
work in her bin was constantly or occasionally or ever before
her." The fact is that the position appeared to be safe, but
in fact was somewhat hazardous, as shown by the accident.

In principle the case is not unlike *Jacobson* v. *Oakland Meat etc. Co.,* 161 Cal. 425, [Ann. Cas. 1913B, 1194, 119 Pac. 653].

Nor do we think there is merit in the contention that "under the facts established, no duty rested upon appellant to place guards on or around the shaft, and respondent was not unaware that guards had not been so placed." The latter clause may be accepted as true, but whether it was the duty of appellant to so protect the shaft is at least susceptible of an honest difference of opinion, and it is not an unreasonable conclusion in view of the circumstances that appellant should have taken this precaution for the safety of its employees. The fact that respondent knew that the shaft was unprotected does not affect the duty of appellant in the premises, but bears upon the consideration of "contributory negligence" or "assumption of risk," and of this nothing more needs to be said.

As to such duty of appellant, it is sufficient to cite *Silviera* v. *Iverson,* 128 Cal. 192, [60 Pac. 687]; *Davis* v. *Pacific Power Co.,* 107 Cal. 563, [48 Am. St. Rep. 156, 40 Pac. 950]; *Jacobson* v. *Oakland M. & P. Co.,* 161 Cal. 425, [Ann. Cas. 1913B, 1194, 119 Pac. 653]; *Perry* v. *Angelus Hospital Assn.,* 172 Cal. 311, [156 Pac. 449]. It is quite clear that the accident would not have happened if the shaft had not projected beyond the bearing or if it had been protected by some simple device. This particular danger could easily have been obviated, and we think it not unjust to hold appellant to the requirement of such care and foresight.

The fifth and sixth contentions of appellant are based upon the theory that respondent is chargeable with contributory negligence. We think it cannot be so held in view of the evidence on behalf of the plaintiff. This consideration has already received sufficient attention as we conceive it. Of course, if we were bound to accept the testimony of defendant's witnesses as to the accident, the conclusion would follow that the injury was the result of plaintiff's negligence, but we must adopt the theory supported by the evidence for the other side. And that evidence leads inevitably to the conclusion that the only negligence in the case was on the part of appellant. Upon the theory that plaintiff was telling the truth, there is no room even for an application of the doctrine of comparative negligence.

Appellant attaches much importance to the matter of instructions. The court gave this instruction, taken from the code: "You are instructed that a witness false in one part of his testimony is to be distrusted in others." Appellant requested a more elaborate instruction, containing this amplification: "If you believe that a witness has testified falsely and has done so knowingly and willfully as to any material matter, you may disregard," etc. In *People* v. *Plyler*, 121 Cal. 160, [53 Pac. 553], it was said that an instruction similar to the one herein requested by appellant was an accurate expression of the statute's meaning and should have been given. However, the case was not reversed for that error, as the court declared that a new trial should be had in consequence of the refusal of the lower court to continue the trial on the defendant's motion. Under the circumstances herein, we do not think the action of the court in this particular involves prejudicial error. It was not error at all to give the instruction in the language of the code. (*People* v. *Dobbins*, 138 Cal. 694, [72 Pac. 339].) Nor would it have been prejudicially erroneous to refuse it. (*Medlin* v. *Spazier*, 23 Cal. App. 242, [137 Pac. 1078].) This follows from the consideration that it pertains to a mere commonplace matter that juries are presumed to know about and act upon in the absence of such instruction. (*People* v. *Delucchi*, 17 Cal. App. 96, [118 Pac. 935].) But the proposed instruction involved in no less degree a platitudinous truism to which the jury, unless lacking in average intelligence, did not need to have their attention called. And if they were so deficient in mind, the instruction could have been of no value to them. It should certainly not be deemed of vital importance to tell the ordinary man of the world that he should distrust the statements of a witness whom he believes to be a liar.

It may be further said that the court gave elaborate instructions upon the credibility of witnesses which were amply sufficient to cover this very consideration.

The court refused the instruction requested by defendant of which the important part is as follows: "If plaintiff was not at the time of the accident at the place where she was directed or required to be and where she should have been in the discharge of her duty, but of her own volition was at some other place in the mill to suit her own convenience or for her own purpose, then I instruct you that plaintiff cannot

recover, and your verdict must be for the defendant." The reason for this was that certain witnesses for appellant testified that the plaintiff, at the time of the accident, was not engaged in her work, but was participating on the floor in a playful diversion and heedlessly backed into the shaft. But we think the instruction was properly refused for several reasons, one of which is, it was based upon the assumption that plaintiff was at a place where she should not have been. There is no room for that inference. The only possible conclusion is that she was at work, or else she was away from the bin because there was no work to do at the time. Assuming that it is true, as stated by some of the witnesses for appellant, that the machinery was not in operation by reason of the lack of hops, plaintiff was not required to remain at the bin, but had a right to go upon the floor for rest or recreation. Therefore, if we concede that the instruction embodied a correct statement of the law, it was properly refused as applicable to a theory without support in the evidence. (*Sill* v. *Ceschi*, 167 Cal. 698, [140 Pac. 949].)

Again, if plaintiff was on the floor, it cannot be disputed that she was ready and waiting to take her place at the bin when the hops should arrive and her work begin. In either event, therefore, she was really engaged in the line of her duty and the course of her employment, and the defendant's responsibility for her safety falls within the general rule already stated. (*Davis* v. *Pacific Power Co.*, 107 Cal. 563, [48 Am. St. Rep. 156, 40 Pac. 950] ; *Cordler* v. *Keffel*, 161 Cal. 475, [119 Pac. 658].) Moreover, at the request of appellant, an instruction applicable to the theory that plaintiff was not at work was given by the court as follows: "The court instructs you that if an employee sustains injuries while he or she is voluntarily and unnecessarily absent from his or her post of duty and neglects to exercise ordinary care for his or her own safety, he or she cannot recover damages for said injuries; if, therefore, you find from the evidence that at the time of the injury to plaintiff she was voluntarily and unnecessarily absent from the place where the defendant company had assigned her to work, and that while so absent she neglected to exercise ordinary care for her own safety, by reason of which her dress came in contact with said shaft resulting in the injuries complained of, then I instruct you that plaintiff cannot recover and your verdict must be for

defendant.'' The foregoing is certainly as favorable to appellant along that line as the law would permit. Appellant is at a loss to understand why the court refused to give this instruction: ''The court instructs you that persons of such age and experience as to be capable of exercising discretion and of appreciating dangers in the work in which they are engaged cannot recover damages for injuries caused by their inattention to their surroundings, and failure to take due precautions against known or obvious dangers.'' We think the instruction was properly refused for the reasons, among others, that it was based upon the unsupported hypothesis that the danger was *known* and *obvious* to the plaintiff; it implied that the doctrine of the ''assumption of risk'' was applicable to the case; and it ignored the principle of ''comparative negligence.''

There is some other criticism of the action of the court in reference to the instructions, but we hardly think it advisable to notice it specifically. The court eliminated some redundant matter and corrected some inaccuracies in several instructions that were proposed, and gave them as corrected. Upon an examination of the whole charge, we are satisfied that every necessary legal principle applicable to any just theory of the evidence was presented to the jury, and it appears to us that therein is found no substantial reason for complaint.

The case was tried upon the theory that the so-called Roseberry Act of 1911 and section 1970 of the Civil Code were and are applicable to the cause. This situation was also conceded in the opening brief of counsel for appellant, but in the closing brief of Messrs. Harrison & Harrison, substituted attorneys, the point is made that they were repealed by the Workmen's Compensation Act of 1913, which went into effect before the commencement of this action. There is no question, though, that the accident happened before said act of 1913 became operative, and without following the argument of appellant in detail, we deem it apparent that section 91 of the act—''the compensation provisions of this act shall not apply to any injury sustained prior to the taking effect thereof''—constitutes a saving clause and continued in force, as far as this case is concerned, the said Roseberry law and said section of the code, the last introducing the condition that the employee must ''fully understand, comprehend and

35 Cal. App.—46

appreciate" the danger to bar his recovery in case of an obvious peril, and the Roseberry Act having made a part of our liability law the doctrine of "comparative negligence."

There is a contention in the opening brief of appellant that the verdict is excessive and should be set aside for that reason, but the point does not seem to be insisted upon in the final brief. We may say, however, that a complete answer to the suggestion is found in *Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237, [116 Pac. 513], and *Scragg* v. *Sallee*, 24 Cal. App. 133, [140 Pac. 706].

The case, as we view it, was fairly, conscientiously, and ably tried by the learned judge who presided, and after an examination of the whole record, we are satisfied that the verdict should not be disturbed.

The judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 28, 1918, and the following opinion then rendered thereon:

BURNETT, J.—We have given careful attention to the forcible and instructive petition for rehearing filed herein by appellant. The position urged with the strongest reason relates to the effect of the so-called saving clause in the said Workmen's Compensation Act of 1913. It may be admitted that the language was not very happily chosen to express the intention of the legislature that the law in force at the time should apply to an accident occurring prior to January 1, 1914, but that such was the intention of the legislature we feel reasonably satisfied. Otherwise, said section 91 of the act of 1913 could have no purposeful and effective operation.

If we adopt the reasoning of appellant we must hold that there is no statutory law in force in this state whereby respondent may secure any remedy for the wrong that she suffered. The said act of 1913 was intended to present and embody a complete scheme for the enforcement of a cause of action like that before us, and it is apparent that all prior legislation on the subject is inconsistent with the provisions of said act. But this statute manifestly can be of no value or benefit to respondent, since by express provision the vital

part of the act can have no application to any negligence occurring prior to January 1, 1914.

We do not think the legislature intended that there should be no statutory provision whereby persons in the class of the plaintiff might secure redress for their injuries, but that a fair and just construction of said saving clause leads to the conclusion that respondent's case was to be controlled by the law as it existed when she was injured.

We also think it should be held that plaintiff's right of action was a vested right which could not be taken away by the repeal of said Roseberry Act. At the time the accident happened she was at work under the operation of a law which provided that if injured by the negligence of her employer, she was entitled to damages for the same although she might be guilty of slight negligence herself. In other words, the law provided that a certain class of persons was entitled to be compensated by the employer for personal injuries suffered by the former. Plaintiff showed that she belonged to that class and, therefore, had a vested right to such compensation. The subject was carefully considered by this court in the case of *James* v. *Oakland Traction Co.,* 10 Cal. App. 785, [103 Pac. 1082], in which a petition for hearing by the supreme court was denied. Therein it was held, in an opinion written by Justice Hart, that "Where section 501 of the Civil Code, as it stood at the time of the injury, regulated the speed of the car so as not to exceed eight miles per hour, such section as it then stood entered into and became part of the contract between the carrier and passengers, which conferred a vested right to recover for breach of such contract, and the subsequent repeal thereof in 1903 cannot operate retroactively to destroy or affect such vested right." We think the same principle is applicable here. The conditions prescribed in the said Roseberry Act constituted a part of plaintiff's contract with defendant, and the question is not, therefore, one of abrogating or changing a statutory remedy, but the construction upon which appellant insists involves an interference with and the destruction of a vested right of an employee sustaining a certain relation to the employer.

The cases cited by appellant—at least, most of them—can be reconciled with our position herein, as they involve a purely statutory right, whereas we are dealing with an obli-

gation based upon the common law which is made definite and enforceable by the provisions of the statute.

We may repeat that if plaintiff's right to recover for damages was derived wholly from the statute the legislature, no doubt, while said right was inchoate and not reduced to possession or perfected by final judgment, might repeal the statute and destroy the remedy, but a different rule seems to apply where, as herein, the right is really derived from the common law.

We think the said Roseberry Act and section 1970 of the Civil Code were applicable to the case of the plaintiff, and on the other points we adhere to the views heretofore expressed. The petition for rehearing is denied.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 25, 1918.