[Crim. No. 156.    Third Appellate District.—September 14, 1911.]

THE PEOPLE, Respondent, v. JOHN DELUCCHI,
Appellant.

CRIMINAL LAW—ASSAULT WITH DEADLY WEAPON—SUPPORT OF VERDICT.
It is held that under an information charging an assault with a
deadly weapon, with intent to commit murder, the evidence, though
conflicting, is sufficient to support the verdict of guilty of an as-
sault with a deadly weapon against the person of the complaining
witness.

ID.—REQUESTED INSTRUCTION — EFFECT OF PLEA OF NOT GUILTY—
COMMONPLACE—REQUEST EMBODIED IN CHARGE.—A requested in-
struction that by the plea of not guilty entered by the defendant,
"he has said that he is not guilty of the crime with which he is
charged, or of any crime included therein," only involves matter
of commonplace; but it was properly refused, because embodied
in the charge to the jury, that such plea "puts in issue every ma-
terial allegation of the information, and makes it the duty of
the prosecution, before a conviction can be had, to establish, to
your satisfaction to a moral certainty, beyond and to the ex-
clusion of a reasonable doubt, by legal and creditable evidence,
each and every material fact essential to a conviction."

ID.—REQUEST AS TO PRESUMPTION OF INNOCENCE—PROPER REFUSAL.—
It was not error to refuse a requested instruction as to the pre-
sumption of innocence, which merely states the doctrine in a
slightly different form from that fully given in the charge of
the court to the jury on that subject, which charge substantially
includes the subject matter of the requested instruction, and
makes it clear that the doctrine of the presumption of innocence
of the defendant is a substantial one, which may not be arbitrarily
disregarded by the jury in their consideration of the evidence,
and that unless after such consideration they become satisfied
of the defendant's guilt beyond a reasonable doubt, they must
acquit the defendant.

ID.—REQUEST AS TO EFFECT OF ARREST AND CHARGE—PROPER REFUSAL.
A requested instruction that "the fact that the defendant has been
arrested and charged with an offense, and that an information
has been filed against him, creates no presumption of guilt," was
properly disallowed, as being embodied in the charge on the sub-
ject as to the presumption of innocence, and also that "the in-
formation is a mere accusation by the district attorney against
the defendant, and is not to be considered by the jury as evidence,
nor are you to infer or presume the guilt of the defendant there-
from."

Id.—Request as to Distrust of False Witness—Refusal not Prejudicial—Charge Favorable to Defendant.—It is held that the court did not err to the prejudice of the defendant, in refusing an instruction as to the distrust of a false witness, where the instruction given to the jury on that subject by the court was more favorable to the defendant than the instruction refused, in stating that it was the jury's duty to distrust the entire testimony of a witness who has been found to have sworn falsely in a material part thereof. It is held, on petition for rehearing, that an instruction in that form would not be prejudicial in any case, whatever the circumstances might be.

Id.—Rule as to Requests Embodied in Charge.—Where requested instructions are substantially embodied in the charge, the court is not bound to repeat them at defendant's request. It is held that requests defining a deadly weapon, setting forth the law of justifiable homicide, and the law as to threats, and as to reasonable doubt, were all properly refused, because fully embodied in the charge of the court.

Id.—Request as to Effect of Exhibiting Weapon in a Rude and Threatening Manner, Without Assault—Refusal not Prejudicial.—It is held that a requested instruction based on the theory that the only offense committed by defendant was in violation of section 417 of the Penal Code, to exhibit a weapon in a rude, angry and threatening manner, without an assault, might properly have been given, yet that the refusal to give it was not prejudicially erroneous, where the court instructed the jury to the effect that if the evidence failed to show an assault of any kind or character upon the complaining witness, it would be their duty to acquit the defendant. It is further held, in view of undisputed evidence, that if the rejected instruction had been given, it would not have affected or changed the verdict rendered.

Id.—Evidence—Cross-examination of · Defendant.—Where the defendant had testified in chief that the crowd arrayed against him were laboring men, including the complaining witness, and that he merely intended to frighten and scatter "the bunch," the district attorney was entitled to weaken such evidence on cross-examination by showing his hostility toward the complaining witness, and that a majority of the onlookers were business men, having no hostility to the defendant, and it is held that there was no prejudicial error in such cross-examination.

APPEAL from a judgment of the Superior Court of Amador County, and from an order refusing a new trial. Fred. V. Wood, Judge.

17 Cal. App.—7 .

The facts are stated in the opinion of the court.

. A. L. Frick, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, Deputy Attorney General, for Respondent.

HART, J.—By information the district attorney of Amador county charged the defendant with the crime of an assault with a deadly weapon with the intent to commit murder.

The jury found the defendant guilty of the crime of assault with a deadly weapon, and the court thereupon imposed upon him a fine in the sum of $600, "and in default of the payment of said fine that he be imprisoned in the county jail of Amador county, California, one day for each two dollars of said fine until said fine is satisfied."

This appeal is from the judgment and the order refusing the defendant a new trial.

The points urged against the judgment and order are that the court erred in refusing to give to the jury certain instructions requested by the defendant and in its rulings permitting certain questions to be asked defendant on his cross-examination.

The evidence, briefly epitomized, developed the following facts: The defendant and the prosecuting witness, one Manuel Lopez, prior to the day on which occurred the difficulty bringing about this prosecution, had worked together at the "Little Amador Mine," situated near Amador City, in the county of Amador, the first named being a "shift boss" and the last named an ordinary laborer; that on the twenty-ninth day of August, 1910, the two men met in the street in Amador City, near the Amador hotel, and engaged in an altercation which finally led to blows being exchanged; that immediately thereafter, the defendant, accompanied by one J. M. Coffman, a barkeeper in the hotel, who had been attracted to the scene of the trouble by the noise made by the men, went into the hotel, where Coffman gave the defendant a 45-caliber Colt's revolver, at the same time saying to the defendant, "Take this and protect yourself if they come in and jump you—maul their brains out."

After the difficulty Lopez started across the street, where a large number of persons had gathered, having been attracted to the street by the trouble between the former and the defendant. Shortly after going into the hotel, the defendant returned to the street with the revolver in his hand, which he held behind him as he approached the spot where Lopez was standing. Some one in the crowd, in a loud voice, warned Lopez that defendant had a revolver, and the former turned and faced the defendant, whereupon, according to Lopez, the defendant presented the revolver, saying to Lopez, "Come here, you s——n of a b——h, I will give you that ten dollars. I will fight you now." Lopez at once grappled with the defendant and undertook to and did at last succeed in wrenching the weapon from the latter's grasp. Lopez testified that, while the struggle for the revolver was in progress, the defendant attempted to fire the weapon, having several times pulled the trigger which failed to strike the cartridge because he (Lopez) kept his fingers between the cartridge and the hammer. There is also testimony showing that when the weapon was taken from the defendant the latter inserted his teeth into Lopez' chin, holding the latter thus for some seconds.

There is some conflict in the testimony, but it is not contended that the evidence is insufficient to support the verdict or that this court would be justified in substituting its judgment as to the effect and weight of the evidence for that of the jury.

We have found no prejudicial error in the court's refusal to allow certain instructions proposed by the defendant.

The first complaint of appellant, as to the matter of the instructions, is that the court seriously erred in not reading to the jury an instruction which would have declared, in express terms, that by the plea of not guilty entered by the defendant to the information, "he has said that he is not guilty of the crime with which he is charged, or of any crime included therein." The reason assigned by the court for its refusal to give said instruction was that the proposition it contained was covered by its charge to the jury, and we think the court was right. The instruction, given by the court, which declared that the defendant's plea of not guilty "puts in issue every material allegation of the information

and places the burden upon, and makes it the duty of, the prosecution, before a conviction can be had, to establish to your satisfaction, to a moral certainty beyond and to the exclusion of a reasonable doubt, by legal and creditable evidence, each and every material fact essential to a conviction,'' in effect fully and clearly covered the proposition enunciated in the rejected instruction. We cannot perceive how a statement that a plea of not guilty tenders an issue upon the question of the defendant's guilt, and that the prosecution has the burden of proving his guilt by the proper degree of proof, can by any possibility be construed by intelligent men to mean anything less than that the defendant has denied his guilt of any offense alleged against him, or, as the refused instruction puts it, that he has thus ''said that he is not guilty of the crime with which he is charged, or of any crime included therein.'' The given instruction, it will be noted, declares that the prosecution is compelled to produce the required proof ''before *a* conviction can be had,'' which language clearly implies a conviction of *any* crime embraced within the allegations of the information. Moreover, to tell the jury that the plea of not guilty by the defendant is tantamount to a declaration by him that ''he is not guilty of the crime with which he is charged, or of any crime included therein,'' would only involve the statement of a commonplace proposition. Obviously, no other possible view could be taken of such a plea. The court made it very clear in its charge that the responsibility of proving the defendant's guilt of any offense comprehended within the averments of the information rested on the people, and this part of the charge itself was sufficient to impress upon the jury, if, indeed, it was necessary to do so, the very obvious proposition that the defendant's plea of not guilty constituted no mere perfunctory act, but involved a serious, earnest protest of his innocence of the crime directly charged or of any other crime included therein.

It is next insisted that the instructions, submitted to the court by the defendant, and rejected, upon the doctrine of the presumption of innocence, should have been allowed, and that the refusal to give them constituted prejudicial error. The court told the jury that the defendant was to be accorded the benefit of the presumption of innocence until the contrary

was proved beyond a reasonable doubt; that such presumption
"goes with the defendant all through the case, and does not
cease upon the submission of the cause to the jury, but oper-
ates in favor of the defendant not only during the taking
of testimony, but during the deliberation of the jury, until
they have arrived at a verdict''; that the jury "must exam-
ine the evidence by the light of this presumption," and that
"unless, upon examining the evidence, you find it sufficiently
strong to overcome the presumption of innocence, to remove
it and to satisfy you of defendant's guilt beyond and to the
exclusion of all reasonable doubt, he is entitled to an acquittal
at your hands." The instructions proposed by the defend-
ant upon said presumption, and which the court declined to
give because "covered by the charge," merely state the doc-
trine in a slightly different form from that in which it is
explained in the court's charge. For instance, they would
have said to the jury that "the presumption of innocence is
not a mere form to be disregarded by you at your pleasure,
but it is an essential, substantial part of the law of the land,
binding upon you in this case"; . . . that "the defendant is
not required to prove his innocence," etc. We are unable
to see how the court could have made it appear any more
clearly than it did in its charge that the presumption of
innocence is not a mere form, which the jury were at liberty
to disregard, or that the defendant was not required to prove
his innocence. It plainly told the jury, as we have seen, that
the defendant was entitled to the benefit of this presumption
through all the stages of the trial and up to the very moment,
while deliberating upon their verdict, that they became con-
vinced that the evidence was sufficient to overcome it beyond
and to the exclusion of any reasonable doubt. If the lan-
guage as thus used is not sufficiently clear to demonstrate to
any person of common intelligence that the presumption of
innocence is not "a mere form to be disregarded by the jury
at pleasure," and that the defendant in a criminal case is
not compelled to prove his innocence, and that the doctrine
is "an essential, substantial part of the law," then it must
be confessed that it has no meaning at all. The very state-
ment that the presumption must stand until dissipated by
evidence establishing the defendant's guilt beyond a reason-
able doubt is itself, if to ordinary language its ordinary

meaning is to be ascribed, a plain and unambiguous declaration that the doctrine is a substantial one which may not be arbitrarily disregarded by the jury.

The court's action in refusing to read to the jury instruction No. 10, proposed by defendant, is also criticised. The part of the instruction which the defendant insists that the court erred in omitting from its charge reads: ''The fact that the defendant has been arrested and charged with an offense, and that an information has been filed against him, creates no presumption of his guilt.'' The court properly disallowed this instruction for the reason, as assigned by it, that the principle embodied therein was given in its charge. The rule proposed to be stated to the jury by said instruction was sufficiently covered in a general way by the court's instructions on the doctrine of the presumption of innocence and particularly by the following instruction which the court gave to the jury: ''The information in this case *is a mere accusation* by the district attorney against the defendant, and *is not to be considered by the jury as evidence, nor are you in the slightest degree to infer or presume the guilt of the defendant therefrom.*'' It is manifest that there is absolutely no difference, except as to form of language, between the foregoing and the rejected instruction. It is clear that if the jury, from the instructions declaring the defendant to be entitled to the presumption of innocence and explaining the only means by which that presumption may be overcome, were not made to clearly understand that they were not justified in encouraging the slightest inference militating against the accused from the mere information itself or the mere filing thereof, the instruction just quoted would most surely leave no doubt in the minds of the triers as to their duty in that regard.

There was no error in the refusal to give defendant's instruction No. 14. The principle set out in said instruction, though in perhaps less amplified form, was stated to the jury much more broadly than we think the law justifies. As given, the instruction reads: ''If any witness examined before you has willfully sworn falsely as to any material matter, *it is your duty to distrust his entire evidence.*'' The rejected instruction states the rule more nearly in the language of the statute than does the given instruction—that is, it

declares that where the witness has willfully testified falsely as to any material matter, "such witness *is to be* distrusted in other portions of his testimony," and to this language is added: "and you are at liberty to disregard from your consideration all of the testimony of such witness, which has not been shown by other evidence to be, or which you do not believe to be, true." It will be observed that the court's instruction declared it to be *the duty* of the jury to distrust the entire testimony of a witness who has been found to have sworn falsely as to any material part thereof. We do not conceive this to be an accurate statement of the rule. We do not understand it to be binding upon the jury to distrust all of a witness' testimony because he may have sworn falsely in a material part thereof. The rule, as it is laid down by the code, merely offers a test by which the testimony of a witness, who has willfully not been truthful in all material parts thereof, may be weighed. We see no inconsistency in believing a portion of the testimony of a witness who, in certain parts thereof, has deliberately testified falsely, and in disbelieving the part or parts that are false, and we do not believe it to be intended by the law that the court should tell the jury, in effect, that because of the willful falsity of a material part of a witness' testimony, it is their unqualified duty to distrust his entire evidence. But we may assume that counsel for defendant had a special reason, arising in the trial of the case, for asking the court to state to the jury the principle contained in the court's instruction upon that subject, and so viewing it, it can only be said that even if the rule as thus given to the jury may not be said to be a strictly correct statement of the law, it was, manifestly, stated to the jury more favorably to the defendant than the one proposed by him and disallowed by the court; for, as will be readily noticed, his instruction would have told the jury that they were *at liberty* to disregard such witness' entire testimony—that is, they could believe or disbelieve those parts not found to be willfully false, according to whether, in their opinion, it was worthy or unworthy of belief—whereas, the court's instruction declares that it is *the duty* of the jury to distrust his entire evidence—language that can mean nothing less than that it was the duty of the jury to arbitrarily disregard the entire testimony of any

witness who has willfully sworn falsely in any material part thereof.

The court refused defendant's instruction, No. 31, defining a deadly weapon. It was properly refused, the court having covered the same matter in its charge. The instruction relating to this subject, as submitted to the jury, reads in part: "A deadly weapon is one which, from the manner in which it is used, is likely to produce death or great bodily injury," following which definition is a statement that, whether the weapon alleged and proved to have been used in the case at bar was or was not a deadly weapon, was a question of fact to be determined by the jury from all the evidence, considered in connection with the definition of a deadly weapon as thus given.

Instructions 32 and 33, proposed by defendant, and setting forth the law of justifiable homicide, were properly refused, as the court, in its charge, fully, clearly and correctly explained to the jury the several occasions, under the law, on which homicide is justifiable. To have given the instructions as offered by the defendant upon the law of self-defense would have been only to unnecessarily repeat to the jury the law on that subject.

Refusal to allow defendant's proposed instruction 37, relating to threats which certain testimony disclosed that the complaining witness had made against the defendant, and explaining the circumstances on which the latter would be justified in using a deadly weapon in his encounter with said witness, was not erroneous, the court having in its charge fully and with sufficient clearness explained to the jury the law in that respect.

It is further objected that the court erred, to the serious injury of the defendant, by declining to read to the jury certain other instructions proposed by the accused. These instructions are numbered 43, 45, 46, 50, 51 and 53, and they merely in effect declare that, unless the jury are convinced by the evidence beyond a reasonable doubt of the guilt of the defendant of some one of the three offenses of which he could be convicted, under the allegations of the information, if the evidence justified it, it would be their duty to return a verdict of acquittal. We shall not examine these instructions here in detail. It will be enough to say, as to these,

that an examination of the court's charge will disclose that the jury were thus clearly instructed on all the propositions of law stated in the rejected instructions. Indeed, while expressing the opinion that the evidence would not justify a verdict of guilty of assault with the intent to commit murder, the court, nevertheless, explicitly and with marked clearness defined the elements of that offense as well as those constituting, respectively, the crimes of assault with a deadly weapon and simple assault and, in short, with the exception of failing to state concretely the rule laid down in defendant's rejected instruction 55, which we shall presently consider, announced to the jury, in very plain and simple language, and correctly, all the principles of law necessary to a fair and just consideration by the jury of any question of fact which might pertinently arise under the information.

As to said instruction 55, while we are of the opinion that the court should have allowed it, we think that the refusal to read it to the jury was without prejudice to the defendant, in view of the given instructions and some of the important facts which stand in the record without contradiction. After briefly recapitulating the circumstances of the trouble between Lopez and the defendant from the time of the occurrence of the original difficulty up to and including the circumstance of the return of the defendant to the street, carrying a revolver and holding the weapon behind his back as he approached Lopez, who was standing in the street with a number of other persons, said instruction proceeds: "and that upon reaching the edge of the porch in front of said hotel, said defendant drew said revolver and *exhibited it to said Lopez, and to one or more other persons, in a rude and angry and threatening manner,* but entertain a reasonable doubt as to whether he attempted to shoot said Lopez, and also entertain a reasonable doubt as to whether he attempted to strike said Lopez in such manner as would have been likely to inflict upon said Lopez great bodily injury, you must find the defendant not guilty of assault with intent to commit murder, and you must also find him not guilty of the crime of assault with a deadly weapon."

The claim of the defense is, and there is testimony in the record tending to support it, that Lopez and certain other persons, who were among the crowd that had gathered at the

scene of the trouble and remained in the street until defendant's return thereto, had threatened to inflict upon the latter bodily injury, and that defendant, upon his return to the street, assaulted no one, but simply exhibited the weapon in the manner described by section 417 of the Penal Code for no other purpose than to frighten his enemies who were in the crowd. Said section reads: "Every person who, not in necessary self-defense, in the presence of two or more persons, draws or exhibits a deadly weapon in a rude, angry and threatening manner, or who in any manner unlawfully uses the same, in any fight or quarrel, is guilty of a misdemeanor."

The obvious purpose of the rejected instruction was to submit to the jury's consideration the question whether the defendant, if committing any crime at all, was guilty only of the crime defined by said section 417 of the Penal Code.

The court, as already noted, correctly and with clearness instructed the jury that "an assault is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another," and further instructed the jury that if they were not satisfied from the evidence, beyond a reasonable doubt, that the defendant was guilty either of an assault with the intent to commit murder, or of an assault with a deadly weapon or of simple assault, as those crimes were defined in the charge, then it would be their duty to acquit the defendant. Thus it will be observed that the court made it clearly to appear to the jury that, if the evidence failed to disclose an assault of any kind or character upon Lopez by the defendant, it would be their duty to acquit the latter; and it would certainly be an unwarranted reproach upon the intelligence of the jury to hold that, if the evidence showed that the defendant made no assault, but merely exhibited the weapon in the presence of the crowd that had collected on the street, in a "rude, angry and .threatening manner," they would not have promptly returned, as, under such circumstances, it would have been their duty to have done, a verdict of acquittal.

But we do not think that it is at all probable, in view of certain facts brought out at the trial, that had the rejected instruction been given to the jury, it would have had the effect of causing them to have reached and returned any different verdict from the one found and recorded.

The undisputed evidence, as seen, shows that the original trouble was between the defendant and Lopez; that upon the cessation of said difficulty, defendant went into the hotel and that Lopez started across the street and there remained with others until the defendant, a short time after going into the hotel, returned, holding a revolver in his hand; that the defendant approached the spot where Lopez was standing, and held, presumably for the purpose of concealing it from view, the revolver behind him; that Lopez was warned by someone on the street that the defendant held a weapon in his hand, and that thereupon a struggle between the two men took place, resulting, finally, in Lopez wresting the revolver from the defendant. The defendant testified that he left the hotel for the purpose of going to the mine at which he was employed, and carried the pistol for the purpose of protecting himself against Lopez and others of the crowd by whom he heard threats made against him while he was in the hotel. But from the undisputed fact that the original difficulty was between the defendant and Lopez, the former, according to his version, getting a little the worst of the affray, and from the admitted manner in which the defendant was carrying the revolver, the jury were clearly warranted in finding that the defendant procured the revolver, and returned to the street with the purpose of resuming hostilities with Lopez and not with an intention of keeping Lopez and other enemies mingling in the crowd (if any others were there than Lopez) from attacking him. It is, of course, to be assumed that the jury, as manifestly they had a right to do, believed Lopez when he declared that the defendant leveled the revolver at him and at the same time attempted to fire it, and we cannot say that the instruction would have operated to change that belief.

Our conclusion upon this point is, as before stated, that while the court might just as well have allowed the instruction, its refusal to do so could not have so prejudiced the defendant as to have denied to him a fair and impartial trial.

The only objection specified here against the rulings of the court on the question of the admissibility of testimony arose on the cross-examination of the defendant. The district attorney first asked the defendant how many people were in the crowd at the time the alleged assault took place,

and he replied: "Oh, twenty-five or thirty; might be less and might be more." The prosecuting officer then asked these questions, to each of which counsel for defendant objected, the court overruling the objections:

"Q. Were those men all laboring men? A. Most of them, I think; I do not know everybody over there."

"Q. There were quite a number of business men looking on, weren't there? A. I could not say; might be, and might be not; I have not time to look around who was the men looking on."

"Q. What was the attitude of all the people there to you, Mr. Dulucchi, against you, or how were they? A. A big majority of the men here, I do not know. I never do anything to anybody; I know many people in Amador; they are always against me, and time I got a little trouble at Amador, I was boss in there; lot of people there they were against, how to go buy that job. I no buy that job; I no ask for that job; I no say whether those people Amador City were business men or not business men."

The ground of the objection to the foregoing questions was that they did not constitute pertinent cross-examination. The district attorney did not explain to the court the purpose of that line of cross-examination, but we think that it is clear, barring the form of the last question, that they were proper questions.

The defendant, as we have seen, sought to convey the impression to the jury that a number of the persons, including the complaining witness, composing the crowd standing on the street when he left the hotel and entered said street after the first trouble, were his enemies, bent on doing him violence. He was asked by his counsel about the people in the crowd and, in reply, explained his reason for procuring and carrying a weapon as follows: "I did not go out to kill anybody; I go out with this idea: Probably if I go out with a pistol, all bunch scatter away and make, clear them up and be all trouble done," or "all the trouble over," as his counsel made him say.

The district attorney (the defendant himself having first stated that those of the crowd who had arrayed themselves against him were laboring men), no doubt sought to show, by the cross-examination to which objection was there and is here

made, that, as a matter of fact, a majority of the crowd were business men who were mere lookers-on and entertained no feeling of hostility whatever toward the defendant, and thus, if he could, weaken defendant's story about the "bunch" being against him, and that his purpose in carrying the revolver to the street was not to "scatter the bunch," but to resume the fight with Lopez.

The question propounded to the defendant as to the "attitude of all the people there to you," etc., called for a conclusion of the defendant and could have been successfully objected to on that ground; but it was eminently proper for the district attorney, in view of the theory of the defense, as disclosed by the defendant's story, to put to the latter proper questions, the object of which was to secure from the defendant himself a description of the manner in which "all the people" acted toward him—whether they sided with or encouraged or manifested, by words or actions, or both, a disposition to assist Lopez as against him, or were apparently indifferent and took no part in the trouble. But the answer to the question was not only not responsive but was, so far as we are able to judge it by the bare record, altogether unintelligible, and would have been stricken out on motion on either ground. There is nothing in the answer, nor in the nature or form of the question, if it may be assumed not to have been proper in substance, that could have done the defendant any harm.

We have now examined all the points pressed on this appeal and have found no error that, in our judgment, calls for a reversal.

The judgment and order are, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 14, 1911, and the following opinion then rendered thereon:

HART, J.—We are satisfied with the conclusion reached in the former opinion in this case. We think, as announced therein, that the court's charge clearly and correctly covered every important question arising upon the evidence, and do not think that it has been or can be shown that any different

verdict would have followed from the giving of the special instructions proposed by the defendant and rejected by the court.

But we may not improperly here say, lest a misapprehension may arise from our criticism of the instruction given by the court based upon subdivision 3 of section 2061 of the Code of Civil Procedure—that a witness false in a material part of his testimony is to be distrusted in others—that we did not intend to be understood as intimating that it was our opinion that an instruction announcing that proposition in the language in which it was expressed by the court would be prejudicial in any case, whatever the facts and circumstances thereof might be. The instruction obviously involves the statement of a mere commonplace or the statement of a proposition which every person of common sense knows or ought to know. Indeed, he would be radically deficient in natural mental equipment who would not know, without being warned, that his duty would be to distrust or not implicitly rely upon important statements of a person who he had found had deliberately lied as to other matters of equal importance. In the case of a trial, about the first thought that would naturally run through the minds of jurors, if they possessed common intelligence, would be their duty to consider with great caution and distrust the testimony of a witness who they had found had been untruthful in a material part thereof, and the court's warning that it is their duty to so view the testimony of such witness has always appeared to the writer to be unnecessary, and, indeed, a reflection upon the intelligence of the jury. The truth is that any man having sense enough to discharge the duties of a juror would distrust the entire testimony of such a witness, whether told by the court to do so or not, unless there were parts of it that harmoniously coincided with the general theory of the case or with evidence as to the reliability of which no question could arise or had arisen.

While, as pointed out in the original opinion, there is a slight variance between the language of the section and that in which the court announced that commonplace to the jury, the difference is so immaterial that we are unable to see wherein the giving of it could have prejudiced the rights of the defendant in the remotest degree or that the jury would

have probably reached any other conclusion had the instruction in the language proposed by the defendant been given in lieu thereof.

We are satisfied that the defendant was fairly tried and that the judgment and order should not be disturbed.

The petition for a rehearing is, therefore, denied.

Chipman, P. J., and Burnett, J., concurred.