[Crim. No. 604.  Third Appellate District.—April 28, 1922.]

THE PEOPLE, Respondent, v. GUS GROENIG, Appellant.

[1] CRIMINAL LAW—GRAND LARCENY—SUFFICIENCY OF INDICTMENT AS PRINCIPAL—EVIDENCE.—In a prosecution for grand larceny an indictment is not insufficient because it charges the defendant as a principal, whereas the evidence shows that he aided and abetted in the commission of the crime.

[2] ID.—EVIDENCE—FALSE TESTIMONY—INSTRUCTIONS.—In a criminal prosecution it is not error to give the following instruction: "If any witness examined before you has willfully sworn falsely as to any material matter, it is your duty to distrust his entire evidence."

[3] ID.—WHO ARE PRINCIPALS—INSTRUCTIONS.—In this prosecution for grand larceny of an automobile, in view of the evidence as to the part taken by defendant in connection with the crime, it was not error to instruct the jury in the language of section 31 of the Penal Code.

[4] ID.—OWNERSHIP OF STOLEN AUTOMOBILE—EVIDENCE—INSTRUCTIONS. In a prosecution for grand larceny of an automobile, it is not error to refuse a requested instruction relating to the ownership of the automobile by defendant, where the whole evidence shows that title to the automobile never passed to him, and there is no evidence that the owner delivered it to him or that he accepted it with the intention of passing title, but, to the contrary, the evidence shows that both parties understood that title had not passed.

[5] ID.—STATEMENT TO DISTRICT ATTORNEY—VOLUNTARY CHARACTER OF —EVIDENCE.—In this prosecution, from the evidence showing that immediately before the defendant made his statement to the district attorney, the latter, after having in effect told him that he was charged with grand larceny of an automobile belonging to a certain person, further stated: "If you have anything to say about the matter we will listen to you. You don't have to talk; we are not going to attempt to make you talk. If you have any explanation to make we will be glad to listen to you," the court and jury were justified in concluding that the statement of the defendant was free and voluntary.

[6] ID. — CORPUS DELICTI — EVIDENCE.—In this prosecution for grand larceny of an automobile, the *corpus delicti* was established by the evidence showing that on the evening of a given day the

6. Proof of *corpus delicti* in larceny, notes, 16 Ann. Cas. 1214; 68 L. R. A. 33; 28 L. R. A. (N. S.) 536; L. R. A. 1916B, 846.

automobile in question was in a locked garage, that the next morning it was discovered that the garage had been broken open and that the car was gone and it was later found at a given city in another state, independent of the defendant's statement or confession.

[7] ID.—TESTIMONY OF ACCOMPLICE—CORROBORATION BY DEFENDANT.— In this prosecution for grand larceny of an automobile, the testimony of the witness whom defendant claimed was an accomplice in the commission of the crime was sufficiently corroborated by defendant's testimony given at the trial and his statement made to the district attorney, or either of them.

APPEAL from a judgment of the Superior Court of San Joaquin County. George F. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. W. Dodge and H. C. Stanley for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—This appeal is from the judgment of conviction of the crime of grand larceny and the order denying defendant's motion for a new trial. He was charged with the theft of an automobile, alleged to belong to Henry Boehm.

The defendant and his wife agreed to sell the latter's house and lot to Boehm on the terms set out in the following contract executed by the parties on the day it bears date:

"This agreement made this 12 day of Jan 1921 between Gus Groenig and Lydia I. Groenig, wife of Gus Groenig first party and Henry Boehm second party. First party is agreed to sell and second party is agreed to buy property on lot 7 block 11, Lodi, Barnhart Tract, for the sum of $2000.00 difference in trade on automobile (Buick 7 passenger) First party furnishes deed certif. of title insurance policy to date. Deposit $2000.00 in the Farmers, Merchants Bank at Lodi, Cal. payable to Lydia I. Groenig on delivery of above stated papers about 17 of Jan. 1921.

"LYDIA I. GROENIG.
"G. GROENIG.
"HEINRICH BOHM."

On the same day Boehm's check was deposited with the bank, together with a letter of instructions reading as follows:

"Enclosed herewith is my check for $2000.00 on the Farmers & Merchants State Bank of Lacrosse, Kansas, payable to you. You are authorized to forward said check for collection and when paid you are to deliver the said sum of $2000.00 to Lydia I. Groenig and G. Groenig upon delivery to you by them of a deed properly executed conveying to me the following premises: Lot seven, block eleven Lodi Barnhart Tract, said deed to be accompanied by a certificate of title showing premises free and clear of any and all encumbrances. Also an insurance policy assigned to me of $2000.00 covering buildings now on premises. You are also authorized to have said deed placed on record for me. . . .

"HEINRICH BOHM."

The defendant testified that he delivered the deed, certificate of title, and assignment of the insurance policy to the bank on the nineteenth day of January. The manager of the bank, Mr. Mettler, denied this statement and testified that such papers were not produced by defendant until February 2d. The defendant testified that when he delivered these papers he asked Mettler to give him the $2,000 deposited, but that Mettler refused, saying that "he could not turn that over to me until Mr. Boehm got back."

J. H. Boehm testified that the automobile was placed in a garage in Lodi on the day the agreement was executed with instructions to the proprietor thereof to keep it "until Mr. Groenig would have time to bring down the papers of the place and until we got our license for the car and everything in shape so we could turn the things over, and . . . that if Mr. Groenig brought anybody there to demonstrate the car . . . he would have the right to demonstrate it, but to bring it back after it was demonstrated."

About January 21st defendant and one R. L. Brown took the automobile out of the garage and later returned it. On the evening of January 23d the automobile was in the garage, which was locked for the night. The next morning it was discovered that the garage had been broken into

57 Cal. App.—32

and the automobile taken. It was finally located in El Paso, Texas. Malcolm Lee testified that during the afternoon of January 23d he was riding in an automobile with the defendant and Brown, they two being in the front seat and Lee in the rear, and that, in a conversation between the defendant and Brown, "I heard about $200 to take it to El Paso . but I didn't get all the words that were in there"; that between 1:30 and 3 o'clock the next morning Brown, a man named Henry Bechtold and the witness took the automobile from in front of defendant's residence and drove it away, finally reaching El Paso with it; that the witness assumed the name Earl McDonald on the trip; that the witness wrote the defendant from some town near Phoenix, Arizona, and that in reply he received a money order from defendant for the sum of $80. About January 25th defendant informed Boehm that he could not wait any longer to consummate the sale of the house and lot as he had an opportunity to sell to another person and the parties then agreed upon a sale to Boehm for $3,000 in cash, in lieu of the original agreement, Boehm to keep the automobile if recovered. On February 2d the transfer of the property was made on that basis.

After his arrest the defendant made a statement to the district attorney. The statement was taken down in shorthand by the court reporter, who testified to the contents thereof at the trial. After stating the substance of the agreement with Boehm, the defendant said: "I was to clear this house, which I did, and he was to clear this car and, being a Kansas car, we were to have ten days in which to do this. . . . He had left the car in the garage there. . . . He gave me the privilege of using it or selling it, or anything like that. . . . I met this man Brown. I asked him if he didn't know somebody that wanted to buy a Haines. . . . I told him I had another car that I had just taken in on a trade, and I described it to him. He says right away, 'I know where we can sell that.' . . . We went over to the garage and I told the garageman, I says, 'Let him have the car.' . . . So I went along with him out here to Elk Grove, somewhere by Galt, the fellow wanted to buy, but he didn't. . . . Brown seemed to be kind of pressed. . . . On the way back I gave Brown $70 or $75. . . . I will tell you the truth and take what comes; I will be

candid with you. . . . I had given Brown this money, and I says now, 'If you don't sell the car I will be loser here.' . . . I took this car back that evening to the garage. . . . I seen him somewhere, I think it was on Main Street, there again that day, and we said something about this money and so on. 'Well,' he says, 'there is more than one way to get around things.' . . . He said if he had a car he could go out and make big money bootlegging. . . . I opposed the proposition. . . . He said he would see that I got rid of that car if we had to steal it. And there is where the trouble started, gentlemen, and there is where I should have said something else; but, of course, I didn't say anything. Well, I don't really know just how these things went on and so on, anyway they occurred. Now then, I didn't see Brown from that day on—I believe it was Friday—until Sunday, when he came to my house; he says that he had hired a man, I don't know what his name is, but he had hired a fellow, and he says, 'We are going to do the business.' He says, 'You stay at home to-night; stay with your family so you won't get into trouble and your family will be with you.' This was Sunday night and Brown asked me for some money. Well, the long and short of it, gentlemen, I gave him some money. I know I was a fool, but I did it. . . . I hadn't told Brown where to take this car. That was up to him to do with as he liked. . . . I don't know whether I asked him to destroy it or sell it, or what. I had the opinion that Brown was going to sell this car. . . . My wife didn't know anything about this. . . . On Sunday afternoon I says to him: 'Now here, Brown, if something goes wrong here, you know I have a family here,' and I says, 'I don't mind giving you any money, as far as money is concerned, if you need it so bad as that,' but I says, 'I don't want to get into trouble here in any way,' I says, 'If you go to work and do this and there is any trouble, you will put me into it and I with a family will have to stand for it.' He says, 'No, I won't do no such a thing, I will go to jail first.' . . . He said he would not be caught.'' The defendant stated that several days after the theft he received a letter from Phoenix, Arizona, and continued his narrative, saying: ''It said something like this: 'Dear Cousin: I am coming to see you. Everything is dried up here. I haven't

any money. Send me $80.' . . . It was signed 'McDonald.' . . . I didn't know I had a cousin by that name. . . . I didn't say anything to my wife. I wish I had, maybe things would have been different, and of course, I was scared too. . . . I got a money order for $80. . . . About the time I went to get this money order I decided it was Brown that had written that letter, see, and I was afraid somebody was on my track, either to get the money or do me personal harm. . . . In order to keep my good name over there I substituted another. . . . I sent that money order from Lodi. I got it at Woodbridge.'' At the trial the defendant attempted to explain away the incriminating statements made to the district attorney. His explanation is far from convincing and it was for the jury to determine which story to believe.

The defendant further testified that after the original contract had been signed ''John and I we drove up to my house, I believe he talked with my wife a little bit . . . and he says, 'Well, what will we do with the automobile?' 'Well,' I says, 'We will leave it right here if I had a garage to put it in but I haven't got it and it can't stay outside.' . . . I suggested that we run it over there in the Central Ave. garage, . . . so we got in and drove it over there. I says to this man Olenberger [the proprietor of the garage], 'I want to leave the car here for a short period of time until we get settled up on the deal; . . . I have took this car in on a trade and we got to get papers for it.' So this man Boehm took the key and gave it to him, what he done with it I don't know; he went into the office and talked with the man.'' The defendant testified that at the time of the transfer of the house and lot on February 2d he said to Mettler, in explanation of the change of terms: ''If you remember this deal we made, John and Henry Boehm and myself, . . . this automobile had disappeared and under the conditions these papers cannot be transferred as they are under that contract.'' Relative to his right to use the automobile, the defendant testified on cross-examination: ''I didn't hear Mr. Boehm say anything to this Mr. Olenberger; I asked Olenberger what the instructions were and Olenberger told me that I could use the car for demonstrating purposes and so on as per Mr. Boehm's orders.''

Mr. Mettler testified that a few days before the car was stolen the defendant asked him whether, if the car was delivered to him and thereafter stolen, Boehm or defendant "would be loser"; that witness replied that he thought the defendant would have to stand the loss; and that the defendant then said that he would not accept it under those circumstances. Mettler's testimony as to this conversation stands wholly uncontradicted. The foregoing lengthy statement of the evidence is deemed necessary to an intelligent understanding of the points made on this appeal.

[1] The indictment was in the usual form and charged the defendant as a principal. The evidence shows that he aided and abetted in the commission of the crime. The appellant contends that the indictment is insufficient in that it fails to allege that defendant so aided and abetted. There is no merit in the contention. (Pen. Code, secs. 31, 971; *People* v. *Nolan,* 144 Cal. 75 [77 Pac. 774].)

[2] It is claimed that the court erred in giving the following instruction: "If any witness examined before you has willfully sworn falsely as to any material matter, it is your duty to distrust his entire evidence." This instruction was criticised in *People* v. *Delucchi,* 17 Cal. App. 96, 102 [118 Pac. 935], and *People* v. *Vertrees,* 169 Cal. 404, 413 [146 Pac. 690], but in neither case was the giving thereof held prejudicial. Instructions in the identical language above quoted, or in stronger terms, have often been approved. (*People* v. *Plyler,* 121 Cal. 160, 163 [53 Pac. 553]; *People* v. *Fitzgerald,* 138 Cal. 39, 45 [70 Pac. 1014]; *White* v. *Disher,* 67 Cal. 402 [70 Pac. 826]; *People* v. *Lon Yeck,* 123 Cal. 246 [55 Pac. 984]; *People* v. *Kelly,* 146 Cal. 119, 123 [79 Pac. 846]; *People* v. *Thomson,* 145 Cal. 717, 722 [79 Pac. 435].)

[3] The court instructed the jury in the language of section 31 of the Penal Code. It is urged that such instruction was not applicable to the charge or the evidence. The evidence quoted clearly shows that the instruction was proper.

[4] Appellant complains of the court's refusal to instruct the jury that if prior to the twenty-third day of January the defendant deposited with the bank the deed admitted in evidence, the certificate of title and an assignment of the insurance policy on the buildings, "then the

title to said automobile vested absolutely in said Gus Groenig and Lydia Groenig by such delivery of said papers, and said Henry Boehm ceased thereby to be the owner of said Buick car and defendant could not be guilty of a larceny thereof''; that if the automobile at the time of the alleged theft was the property of the defendant, the defendant could not be guilty of stealing the same; and that if, ''on or about January 23, 1921, defendant had done all that was required of him to consummate the agreement with Henry Boehm whereby said automobile was to be turned in to defendant as part payment for a house and lot to be conveyed to said Henry Boehm, then you will find the defendant not guilty.'' The only instruction given by the court relative to the ownership of the automobile was, in appropriate language, that if the defendant stole the automobile at the time alleged and the same was then the personal property of Henry Boehm, the jury should convict.

The whole testimony, even that of the defendant, shows that title to the automobile never passed to him. (Sec. 1141, Civ. Code.) There is no evidence whatever that Boehm delivered it to defendant or that the latter accepted it with the intention of passing title, but, to the contrary, the evidence shows that both parties understood that title had not passed. The defendant told Mettler he would not accept delivery until the transaction was completed. When it was learned that the automobile was gone, the defendant and Boehm entered into a new agreement by the terms of which Boehm paid an additional thousand dollars for the house and lot in lieu of the delivery of the automobile and neither of them contended or suggested that title to the automobile had passed prior to the theft. Neither in his lengthy statement to the district attorney nor in his testimony given at the trial did the defendant once say that he even thought that the automobile belonged to him or that he had the right to take it. There was no evidence to which the refused instructions were applicable.

[5] The admission in evidence of the defendant's statement to the district attorney is assigned as error on the ground that it was not voluntary. The testimony shows that no threats or promises were made to induce the defendant to make the statement and that the statement was voluntary on his part. Immediately before the defendant

made the statement, the district attorney said to him: "Gus, you are brought back, as you probably know, on a charge of grand larceny of an automobile, for taking an automobile belonging to a man by the name of Boehm, a preacher out here at Lodi; I had you brought up here. If you have anything to say about the matter we will listen to you. You don't have to talk; we are not going to attempt to make you talk. If you have an explanation to make we will be glad to listen to you." From this testimony the court and jury were justified in concluding that the statement was free and voluntary.

[6] Appellant contends that, independent of the defendant's statement or confession, the *corpus delicti* was not established. The evidence shows that on the evening of January 23d the automobile was in a locked garage, that the next morning it was discovered that the garage had been broken open and that the car was gone and it was later found in El Paso, Texas. Certainly, such proof is sufficient to show that the machine was stolen.

[7] It is lastly urged that the witness Lee was an accomplice in the commission of the crime and that there is not sufficient corroboration of his testimony. The defendant's testimony given at the trial and his statement made to the district attorney are, either of them, amply sufficient corroboration. The evidence establishes the defendant's guilt with unusual certainty.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 26, 1922.

All the Justices concurred.

Shurtleff, J., was absent and Richards, J., *pro tem.*, was acting.