[Crim. No. 1402.   Second Appellate District, Division Two.—April 21, 1927.]

THE PEOPLE, Respondent, v. J. K. FRONK et al., Appellants.

[1] CRIMINAL LAW — EMBEZZLEMENT BY BRANCH MANAGER OF BANK AND CUSTOMER—ACCESSORIES—INDICTMENT—SUFFICIENCY OF.—An indictment, wherein it is alleged that the branch manager of a bank and another individual committed the felony of embezzlement; that the branch manager in his capacity as agent had certain moneys under his control for his principal; and that he and

said individual "wilfully" and "feloniously" converted the moneys to their own use, was sufficient, without charging embezzlement by the branch manager and also charging that said individual aided and abetted the branch manager in the commission thereof.

[2] ID. — ACCESSORIES BEFORE FACT — PRINCIPALS — DISTINCTION BETWEEN ABOLISHED—PLEADING.—Under our system of pleading the distinction between accessories before the fact and principals is abolished by section 971 of the Penal Code.

[3] ID.—EMBEZZLEMENT—ACTING IN CONJUNCTION WITH AND AS ACCOMPLICE OF AGENT.—While it may be that such individual could not be guilty of the crime of embezzlement of property not entrusted to his care and under his control, if acting alone and independently, yet in conjunction with the person acting as agent and as an accomplice of that agent, he could be guilty.

[4] ID.—EMBEZZLEMENT—CORPUS DELICTI—EVIDENCE — EXTRAJUDICIAL ADMISSIONS.—In this prosecution for embezzlement by a branch manager of a bank and a customer of such bank, the *corpus delicti* was sufficiently proven to warrant the introduction as against the branch manager of extrajudicial admissions made by him.

[5] ID.—CORPUS DELICTI—ELEMENTS OF.—In such prosecution, the body of the crime consisted of an agency between the branch manager and the bank, control of the principal's money in his capacity as agent, that the money belonged to his principal, and the conversion of the money to his own use and in violation of his trust.

[6] ID. — CONVERSION OF MONEY AND VIOLATION OF TRUST — CORPUS DELICTI—EVIDENCE—CONFESSIONS—ADMISSIONS.—With respect to the element of the *corpus delicti*, namely, the conversion of money and violation of trust, the testimony establishing the *corpus delicti* sufficiently to warrant the introduction of confessions or admissions need not be of a conclusive character such as to warrant a conviction; and in such prosecution, the testimony was sufficient to prove such element of the offense to warrant the introduction of admissions or confessions.

[7] ID.—ISSUING CASHIER'S CHECKS FOR WORTHLESS PERSONAL CHECKS OF CUSTOMER—INTENT—EVIDENCE.—In such prosecution, where the

2. See 7 Cal. Jur. 887.

3. Criminal responsibility of one co-operating in offense of embezzlement which he is incapable of committing personally, note, 5 A. L. R. 784. See, also, 1 R. C. L. 145.

5. Definition of *corpus delicti* and general principles of law respecting it, notes, 78 Am. Dec. 252; 68 L. R. A. 33. See, also, 8 Cal. Jur. 166; 7 R. C. L. 774. Proof of *corpus delicti* in prosecution for embezzlement, notes, 17 Ann. Cas. 630; L. R. A. 1917A, 1289. See, also, 9 R. C. L. 1296.

6. See 8 Cal. Jur. 167; 7 R. C. L. 775.

embezzlement of the bank's money was committed by means of the branch manager issuing cashier's checks, which were paid, for the customer's personal checks, which were worthless, if the branch manager knew that the checks he accepted were worthless and he intended to and did convert the funds of the bank to their joint use by means of the subterfuge of worthless checks, he is guilty of the offense charged; and the jury were authorized in drawing such inference from the fact that money and gifts were made to the branch manager by the customer, the personal relationship existing between them, and the branch manager's knowledge that the customer was issuing worthless paper.

[8] ID.—VERDICT—EVIDENCE—APPEAL.—Where there is substantial evidence upon which the jury could rest their verdict it is not within the province of appellate tribunals to do other than follow that conclusion.

[9] ID.—EVIDENCE.—In such prosecution, the branch manager's case was not prejudiced by the action of the trial court in sustaining an objection to a question concerning the aggregate amount of cashier's checks sold to the customer in question through the branch bank during a certain period.

[10] ID.—CHECKS—FICTITIOUS BALANCE—EVIDENCE.—In such prosecution, where the defense attempted to show a very considerable deposit made in another bank for the purpose of justifying the branch manager in issuing the cashier's checks, it was proper to permit the prosecution to introduce the checks deposited in said bank, together with testimony to show that the balance was fictitious and the checks worthless.

[11] ID.—INSTRUCTIONS.—In such prosecution, the instructions correctly applied the law to the facts of the case and fully and fairly advised the jury thereof.

(1) 31 C. J., p. 738, n. 44.   (2) 31 C. J., p. 661, n. 95.   (3) 20 C. J., p. 457, n. 56.   (4) 16 C. J., p. 853, n. 96.   (5) 16 C. J., p. 771, n. 23.   (6) 16 C. J., p. 737, n. 51.   (7) 20 C. J., p. 486, n. 60.   (9) 17 C. J., p. 255, n. 55.   (10) 17 C. J., p. 335, n. 13.   (11) 20 C. J., p. 482, n. 39.   (12) 20 C. J., p. 490, n. 85.

APPEAL from judgments of the Superior Court of Los Angeles County and from orders denying new trials.   Edwin F. Hahn, Judge.   Affirmed.

The facts are stated in the opinion of the court.

W. V. Anderson and C. M. Fickert for Appellant Fronk.

Munson T. Case and William G. Randall for Appellant Landon.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

THOMPSON, J.—J. K. Fronk and Lloyd Albert Landon were jointly indicted by the grand jury of Los Angeles County, charged in two counts with the larceny of $12,500 and $10,300, respectively. They were acquitted by the jury on these two counts. The indictment also charged them in counts three and four with the embezzlement of the same sums, alleging that the defendant Landon, who was the manager of the Santa Barbara and Western Avenue Branch of the Hellman Commercial Trust & Savings Bank, had in his control as agent and bailee of the Hellman Commercial Trust & Savings Bank the moneys heretofore mentioned, and that he and the defendant Fronk did "wilfully, unlawfully, fraudulently, and feloniously convert, embezzle, and appropriate" the same to their own use, "and to uses and purposes not in the due and lawful execution of the said trust of the said Lloyd Albert Landon." The jury returned a verdict of guilty on these last two counts, charging embezzlement, and from the judgments pronounced upon the verdicts and from orders denying their motions for a new trial the defendants prosecute separate appeals.

[1] In the interests of clarity, we will before reciting further facts dispose of one point urged by the defendant Fronk, to wit: That counts three and four do not charge facts constituting an offense committed by him, nor charge him with being an accessory to an offense. His contention may be stated this way: That inasmuch as the indictment alleges that Landon was the agent having the funds under his control it was necessary that it charge embezzlement by Landon and then if it was sought to hold Fronk as an accessory, to charge that he aided and abetted the defendant Landon in the commission thereof. We do not agree with this assertion by the appellant Fronk. [2] Under our system of pleading the distinction between accessories before the fact and principals is abolished by section 971 of the Penal Code. It is sufficient if the pleading advises the defendant of the facts charged, provided, of course, that the

facts so charged do constitute the offense. (*People* v. *Rozelle,* 78 Cal. 84–90 [20 Pac. 36] ; *People* v. *Schroeder,* 43 Cal. App. 623 [185 Pac. 507].) To have alleged the agency of Landon, his control of the money belonging to his principal and that he converted it to his own use in violation of his trust, and that Fronk, knowing the facts of agency, control, and purposes, aided and abetted Landon in the conversion of the money to his own purposes in violation of the trust, would not have alleged a situation different from that made to appear here. It is alleged that Landon and Fronk committed the felony of embezzlement; that Landon in his capacity as agent had certain moneys under his control for his principal; that he and Fronk "wilfully" and "feloniously" converted the moneys to their own use. In substance, the allegations are the same. In fact, in the case of *People* v. *Rozelle, supra,* relied upon most strongly by the appellant Fronk, the court says: "The defendant might properly have been charged as a principal. In other words, it might have been charged, in direct terms, that he committed the act. (Pen. Code, sec. 971.) And this is much the better and safer practice. (*People* v. *Outeveras,* 48 Cal. 19.)" See, also, *People* v. *Groenig,* 57. Cal. App. 495–501 [207 Pac. 502]. **[3]** While it may be said that Fronk could not be guilty of the crime of embezzlement of property not entrusted to his care and under his control, if acting alone and independently, yet in conjunction with the person acting as agent and as an accomplice of that agent, he could be guilty. The same principle was declared in the case of *People* v. *Anderson,* 75 Cal. App. 365 [242 Pac. 906], where a private citizen claimed he could not have been guilty of the crime of accepting a bribe. The court said: "It is true that as a private citizen he could not as a principal be guilty of the crime of bribery as defined by the above code section. But in conjunction with one or more of the officers mentioned in said section of the code and as an accomplice of such officer, he could be guilty of the crime as defined by said section 68. (Pen. Code, secs. 31 and 971; *People* v. *Bartol,* 24 Cal. App. 659 [142 Pac. 510] ; *People* v. *Horn,* 25 Cal. App. 583 [144 Pac. 641] ; *People* v. *State,* 118 Ga. 799 [45 S. E. 614].)"

The testimony in this case shows that Fronk was conducting a legitimate automobile business. As aids to faster

expansion he also conducted business under the following names: J. K. Fronk Finance Company, Bureau of Business Standards, and Western Automobile Company. Under his own or one or more of these names he opened accounts in seven different banks in Los Angeles. In addition to legitimate and regular commercial paper deposited in these banks and for about eight months prior to December, 1925, the defendant Fronk was drawing checks on various banks and depositing those checks in various other banks, taking advantage of the time necessary for the paper to pass through the clearing-house, thus building up in the deposit accounts fictitious balances. This very briefly describes the process of "kiting checks" which was the custom which led to the transactions in question. During this time he assiduously cultivated the friendship of the defendant Landon—made him presents of liquor and gave him money aggregating approximately $1,500; that Fronk, at Landon's request, gave a position to a relative of Landon's wife. It was also testified that the defendant Landon was frequently seen in Fronk's office. Landon testified that the gifts of money were made to him without any agreement or understanding concerning the reason therefor, but that he assumed it was only the lavish hand of the easy spender. Prior to the transactions here complained of Landon admitted that he knew that Fronk was kiting a considerable number of checks, but says that from conversations had with Fronk that he believed Fronk could easily take care of all concealed overdrafts thus created, within a few hours if it became necessary. On December 28, 1925, Landon issued to Fronk a cashier's check payable to the Western Automobile Company for the sum of $12,500 and took in exchange Fronk's personal check for a like sum drawn on the Manchester-Moneta Avenue State Bank, and on December 30, 1925, issued to Fronk two cashier's checks for $5,000 and $5,300, made payable to the same payee, and accepted Fronk's personal check drawn on the Santa Monica and Western Avenue Branch of the Citizens Trust & Savings Bank for $10,300. Many times previously Landon had accepted personal checks of Fronk in payment of cashier's checks and the checks had theretofore been honored—but on this occasion they were not paid by the banks upon which they were drawn, although the first check when first pre-

sented to the Manchester-Moneta Avenue State Bank, on December 30th was charged to Fronk's account, but later in the day on the instruction of the bank examiner was returned and marked "Not sufficient funds." It also appeared from the testimony that neither of the banks upon which the checks were drawn had entered into any agreement with Fronk for the extension of credit to him or permitting him to overdraw his accounts. The cashier's checks of $12,500 and $5,300 were paid by the Hellman Commercial Trust & Savings Bank.

[4] Both appellants complain of the admission in evidence over their objection of a transcription made by the stenographer who took it in shorthand of answers made by the defendant Landon in response to questions propounded by a captain of police. So far as the defendant Fronk is concerned, however, the court sustained the objection and told the jury that it could not be considered as affecting the interests of the defendant Fronk, but only as affecting the interests of the defendant who made the statements. The appellant Landon argues that the *corpus delicti* had not been proven sufficiently to warrant the introduction of extrajudicial admissions. [5] The body of the crime in this case consists of the agency, control of the principal's money in his capacity as agent, that the money belonged to his principal (due proof of these three elements cannot here be questioned), and the conversion of the money to his own use and in violation of his trust. (*People* v. *Schroeder, supra.*) [6] With respect to the last element the testimony establishing the *corpus delicti* sufficiently to warrant the introduction of confessions or admissions need not be of a conclusive character such as to warrant a conviction. (*People* v. *Rowland,* 12 Cal. App. 6 [106 Pac. 428]; *People* v. *Frazer,* 80 Cal. App. 464 [252 Pac. 633].) In the present case it was established without the aid of defendant's statements that he and Fronk were very friendly; that he was receiving money from Fronk; that he had no authority to make loans for the bank or accept personal checks on banks other than his own in return for cashier's checks; that cashier's checks were issued in exchange for personal checks which were not honored; that two of the cashier's checks were paid by Landon's principal to a concern operated by Fronk. There was also testimony that while it was Landon's

duty to report overdrafts to the main bank, the report sent in on December 28th did not disclose the overdraft by Fronk. There was ample testimony establishing Fronk's habit of "kiting checks." We think that this testimony sufficiently proved the last element of the offense to warrant the introduction of admissions or confessions. The inference is justified from the relationship of the defendants and the moneys paid to Landon by Fronk that they were working in conjunction with the object of converting the bank's funds to their own purpose.

[7] Both defendants assert and argue with commendable sincerity that the testimony fails to establish the crime of embezzlement; the appellant Fronk maintaining that at most the facts proven only constitute the offense of issuing checks without sufficient funds, and the appellant Landon claiming that the worst construction possible to be placed upon the acts, described the crime of obtaining property by false pretenses. We are of the opinion, however, that appellants overlook the deductions which the jury were entitled to draw from the fact that money and gifts were made to Landon by Fronk, the personal relationship existing between them, and Landon's knowledge that Fronk was issuing worthless paper. It is immaterial what means or processes the defendants adopted to convert the money entrusted to the care of Landon. The fact that cashier's checks were issued evidencing the bank's obligation to pay, and which were paid, does not differentiate it from a case where the money might be taken directly instead of indirectly. If Landon knew that the checks he accepted were worthless and he intended to and did convert the funds of the bank to their joint use by means of the subterfuge of worthless checks, he is undoubtedly guilty of the offense charged. (*Ex parte Hedley,* 31 Cal. 108; *People* v. *Leonard,* 106 Cal. 302 [39 Pac. 617].) We think the jury were authorized in drawing the inference just mentioned, from the testimony heretofore recited. [8] And, of course, where there is substantial evidence upon which the jury could rest their verdict it is not within the province of appellate tribunals to do other than follow that conclusion.

[9] The appellant Landon says that he fought continuously for an opportunity to inform the jury of all the business transactions between Landon and Fronk, but he

specifies no instances where the court refused him that privilege. We are left without specification except that the attorney-general supplies us with one question asked of a witness, as follows: "Mr. Wilson, do you know the amount, the aggregate amount of cashier's checks sold to J. K. Fronk through your bank's branch at Santa Barbara and Western avenue during the period of eight months up to the end of December?" The objection to this was sustained. There may have been many instances of regular transactions. There may possibly have been instances of irregular transactions. We fail to see how the aggregate amount of good and bad, assuming that they were such, could be of any assistance in determining the intent on Landon's part. But assuming that it was, there was evidence introduced to show that during that period of time, cashier's checks to the extent of about $2,000,000 were sold. The ruling of the court could not possibly have prejudiced defendant's case.

[10] Counsel for Fronk assigns as error the introduction of certain checks deposited with the Manchester-Moneta Avenue State Bank. The situation presents itself in this wise, that in order to justify Landon in issuing the cashier's checks the defense attempted to show a very considerable deposit made in the bank mentioned. The prosecution then offered the checks, together with testimony to show that the balance was fictitious and the checks worthless. We can see no error.

[11] Complaint is made of some of the instructions. We have examined them all and think they correctly applied the law to the facts of the case and fully and fairly advised the jury thereof.

The judgments and orders are affirmed.

Works, P. J., and Craig, J., concurred.